**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James P. CRAVEN, Defendant-Appellant.**

**No. 72-1738.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 13, 1973.

Decided May 8, 1973.

Peter Beasley, Covington, Ky., and Raphael P. Koenig, New York City, for defendant-appellant; Peter Beasley, and James L. Cobb, Jr., Covington, Ky., and Ronald B. Finn, Cincinnati, Ohio, on brief; Murray E. Gottesman, New York City, of counsel.

Anthony W. Nyktas, and Grayce Ruehlman, Cincinnati, Ohio, for plaintiff-appellee; William W. Milligan, U. S. Atty., Norbert A. Nadel, First Asst. U. S. Atty., Ralph Winkler, Anthony W. Nyktas, Asst. U. S. Attys., Cincinnati, Ohio, on brief.

Before CELEBREZZE, MILLER and LIVELY, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

The defendant, James P. Craven, appeals his convictions under a six count indictment charging him with violations of the Federal firearms and narcotics laws. The first three counts of the indictment charged, respectively, the possession of an automatic Underwood Carbine, an automatic Beretta pistol and a Maxim Silencer, in violation of 26 U.S.C. §§ 5861(d) and 5871. Count IV of the indictment charged Craven with receiving a Smith & Wesson revolver, transported in interstate commerce, while under indictment for a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(h)(1) and 924(a). Counts V and VI charged the defendant with possession of heroin in violation of 26 U.S.C. § 4704(a) and 21 U.S.C. §§ 173 and 174, respectively. After a jury trial, the defendant was found guilty on all counts and sentenced to a total of 40 years imprisonment and fined $30,000.

On April 30, 1971, law enforcement officers searched a residence at 10180 Rustic Lane in Woodlawn, Ohio, pursuant to a federal search warrant directing the seizure of illegal firearms. The search uncovered an automatic Underwood Carbine (Count I), a Smith & Wesson revolver (Count IV), a strong box containing $13,000 in cash and monogrammed men's shirts bearing the initials JPC, in the master bedroom of the house. In a secret compartment located in the vertical riser of the basement stairs, the officers found a Beretta automatic pistol (Count II), a P–38 pistol and a Maxim Silencer designed for use with the P–38 (Count III).[1] Also found

1. The Underwood Carbine, Beretta pistol and the Maxim Silencer are all firearms as defined in 26 U.S.C. § 5845 and were not registered to the defendant or anyone else as required by 26 U.S.C. § 5861(d).

in this compartment was a brown paper sack containing 1852 glassine bags of heroin, 2000 empty glassine bags, a clear plastic bag containing heroin and a quantity of narcotic dilutants (Counts V and VI).[2] At the time of the police raid the defendant was not present at this residence but his wife, Mrs. Jackie Craven, and two other adults and three children were present.

The residence from which the illicit weapons and narcotics were recovered had been owned by a Mr. and Mrs. Christian until November 1970, when it was sold and title placed in the name of the Commons Corporation. Prior to this sale the defendant and his wife viewed the house with a third party who participated in negotiating the sale to the Commons Corporation. Subsequently, in December 1970, the property was transferred from the corporate entity to James P. Craven and Jackie Craven who moved into the house immediately after the Christians vacated it. Christian designed and built the Rustic Lane house in 1951 and lived in it with his family continuously until they moved in late December 1970. At the time the Christians vacated the house there was no secret compartment in the basement stairs.

On December 23, 1970, water service to the property was placed in the defendant's name and on December 28, 1970, Craven purchased a lawn tractor from a dealer in the area. This equipment was later delivered to 10180 Rustic Lane. On three occasions—December 1970, January and February 1971—a locksmith installed locks and rekeyed locks in the house and on each visit he dealt with Mrs. Craven. However, on February 17, 1971, the locksmith returned to the house and the defendant requested the locksmith to open the bedroom door because he was locked out. The locksmith opened the door, changed the lock tumblers and made two new keys.

In March 1971, one Alice Freeman went to the Rustic Lane house where Jackie Craven and the housekeeper were present. The defendant arrived later and sold Alice Freeman a white powder in a plastic bag in the basement of the house. On April 22, 1971, one Joel Cornelius went to the residence to collect his bill for putting a new roof on the house which he had installed at Mrs. Craven's request. He was met by Mrs. Craven and shown to the master bedroom where the defendant was sitting up in bed in his underwear. Craven then gave a key to Jackie Craven who went to a strong box in the closet, removed a paper bag and handed the bag to the defendant. The sack contained small bills and Craven counted out $3,100 and paid Mr. Cornelius. While the roofer was in the house he saw a revolver which looked like the weapon forming the basis of Count IV of the indictment lying near the defendant on the bed. He also observed several rifles lying about.

When the defendant surrendered to the authorities on May 4, 1971, he was accompanied by his attorney. Agent Ginetz of the Bureau of Narcotics and Dangerous Drugs read Craven the Miranda warnings and the defendant was processed through the customary booking procedures. While these administrative steps were being taken, Agent Ginetz and the defendant engaged in a conversation away from Craven's attorney. In response to the agent's inquiry about the guns the defendant stated that he was a gun collector. When asked about the machine guns the defendant said that he had had the machine guns for some time. While the defendant was being fingerprinted another agent inquired about the firearms and Craven told him that he had been collecting guns and had moved them to the Rustic Lane house from another location.

After the raid, Craven again met Alice Freeman and told her that the government did not have a case against him. He also stated to her that he was not present at the time of the raid and

---

2. There were no transfer tax stamps on or near the heroin as required by 26 U.S.C. § 4704(a).

that he should have moved the "stash" earlier.

The defense presented evidence that Craven's fingerprints were not on the bag in which the heroin was discovered and that two other individuals besides Jackie Craven resided in the house. Further defense evidence showed that the defendant did not live at the Rustic Lane address but that he lived with another woman at a separate address. Also evidence was presented that on the night before the raid the other individuals in the house gave a party and a guest left the revolver named in Count IV of the indictment at the house.

## I

The defendant contends that the district court erred in denying his motion for a judgment of acquittal as to all six counts of the indictment made at the conclusion of both the government's case and again when the defense rested. In reviewing a motion for a judgment of acquittal the evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the government. If in that light, the evidence is such that a reasonable mind might fairly find guilt beyond a reasonable doubt, the issue is for the jury and the refusal to grant a judgment of acquittal must be sustained. United States v. Collon, 426 F.2d 939 (6th Cir. 1970); United States v. Smith, 399 F.2d 896 (6th Cir. 1968); United States v. Carabbia, 381 F.2d 133 (6th Cir. 1967); United States v. Smith, 343 F.2d 847 (6th Cir. 1965); United States v. Grimes, 332 F.2d 1014 (6th Cir. 1964). This principle, of course, applies to each element of the alleged offense.

### Counts I, II and III

Under Counts I, II and III of the indictment the defendant is charged with violating 26 U.S.C. § 5861(d) which states:

It shall be unlawful for any person—

. . . . . .

(d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record.

The defendant contends that the government's evidence is insufficient to establish possession of the named firearms.

Possession may be either actual or constructive and it need not be exclusive but may be joint. United States v. Black, 472 F.2d 130 (6th Cir. 1972); United States v. Holt, 427 F.2d 1114 (8th Cir. 1970). Actual possession exists when a tangible object is in the immediate possession or control of the party. Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others. United States v. Viraglia, 441 F.2d 1295 (5th Cir. 1971); United States v. Burch, 313 F.2d 628 (6th Cir. 1963). Both actual possession and constructive possession may be proved by direct or circumstantial evidence. It is not necessary that such evidence remove every reasonable hypothesis except that of guilt. United States v. Morgan, 469 F.2d 83 (6th Cir. 1972); United States v. Bishop, 437 F.2d 97 (6th Cir. 1971); United States v. Prieur, 429 F.2d 1237 (6th Cir. 1970); United States v. Bradley, 421 F.2d 924 (6th Cir. 1970); United States v. Burkeen, 350 F.2d 261 (6th Cir. 1965); United States v. Grimes, 332 F.2d 1014 (6th Cir. 1964).

In this case the evidence, when viewed most favorably for the government, amply establishes that Craven had constructive possession of the firearms named in the first three counts of the indictment. He clearly exercised constructive possession of the house and indeed the defendant concedes this point. Although possession of the residence is insufficient to establish possession of all the contents of the house, the government's evidence went much further. The Underwood Carbine (Count I) was found in the master bedroom of the residence, a room in which monogrammed men's shirts bearing the defendant's ini-

tials were found. The defendant was also placed in this room by the roofer's testimony which reasonably indicated that Craven slept in the room and therefore had constructive joint possession of it. Added to these facts were two statements made by Craven in response to inquiries about the guns seized in the raid that he collected guns which allowed the jury reasonably to infer that these weapons belonged to him. Therefore this evidence was sufficient to establish constructive possession of the firearm named in Count I of the indictment. The evidence of the defendant's constructive possession of the house combined with his admissions concerning the guns were sufficient to establish constructive possession of the firearm and silencer found in the secret compartment in the basement stairs (Count II and III). The lower court did not err in refusing to grant a judgment of acquittal and it necessarily follows that the evidence is sufficient to support the jury verdict on these three counts.

### Count IV

The defendant challenges the district court's refusal to grant a judgment of acquittal on Count IV of the indictment which charges Craven with violating 18 U.S.C. § 922(h)(1). The applicable part of this statute reads:

It shall be unlawful for any person—

(1) who is under indictment for [a crime punishable] by imprisonment for a term exceeding one year . . . to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

The only element of this offense which the defendant contends was not established by the prosecution was that of receipt of the firearm.

The government's evidence showed that a police officer of the City of Lexington, Kentucky, owned a Smith & Wesson, Model 10, .38 caliber revolver, Serial Number D186581 and that this officer lost the weapon while on duty on April 12, 1971, in the City of Lexington. The evidence also disclosed that Joel Cornelius, the roofer who put a new roof on the Rustic Lane house, saw a revolver that looked like the revolver named in Count IV lying on the bed in which the defendant was sitting on April 22, 1971. A Smith & Wesson, Model 10, .38 caliber revolver, Serial Number D186581 was found in the master bedroom of the Rustic Lane house by federal officers executing the search warrant. The prosecution also established that Craven was under an Ohio indictment for carrying a concealed weapon from March 26, 1971, through the time of the raid on April 30, 1971. This offense is punishable by imprisonment for a term exceeding one year in Ohio.

The defendant's argument on this point is twofold: first, that the government failed to show that Craven possessed the revolver, and second, that merely showing possession is insufficient to prove receipt under 18 U.S.C. § 922(h)(1). Both branches of the defendant's argument are untenable.

■ The prosecution produced evidence sufficient to warrant a jury in finding that Craven had constructive possession of the revolver. The government's proof indicated that the defendant had, at a minimum, joint constructive possession of the house and that only eight days prior to the date the defendant was charged with possessing the weapon, he was seen in the master bedroom of the residence sitting in bed with a revolver which looked like the firearm named in Count IV lying on the bed. Further, the defendant's own admissions concerning the weapons found during the raid were sufficiently broad to permit the jury reasonably to conclude that this revolver was encompassed by the statements.

■ The second portion of the defendant's argument presents a question of first impression since no reported decision to date has dealt with 18 U.S.C. § 922(h)(1). This section is part of Title IV of the Omnibus Crime Con-

trol and Safe Streets Act of 1968, Pub. L.No. 90–351, § 901, 82 Stat. 225, and varies little from previous statutes.[3] In United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 448 (1971), the Supreme Court dealt with a part of Title VII of the same Act, 18 U.S.C. App. § 1202(a),[4] and in construing that section

---

3. 18 U.S.C. § 922(h) is a modified and recodified version of 15 U.S.C. § 902(f) (1964), Act of Oct. 3, 1961, Pub.L. No. 87–342, § 2, 75 Stat. 757. Also of interest is 18 U.S.C. § 922(g) which succeeds 15 U.S.C. § 902(e) (1964), Act of Oct. 3, 1961, Pub.L. No. 87–342, § 2, 75 Stat. 757. Both of the earlier sections amended the original statute, Act of June 30, 1938, ch. 850, § 2, 52 Stat. 1250.

Former 15 U.S.C. § 902(e) and (f) state:

(e) It shall be unlawful for any person who is under indictment or who has been convicted of a crime punishable by imprisonment for a term exceeding one year or who is a fugitive [sic] from justice to ship, transport, or cause to be shipped or transported in interstate or foreign commerce any firearm or ammunition.

(f) It shall be unlawful for any person who has been convicted of a crime punishable by imprisonment for a term exceeding one year or is a fugitive [sic] from justice to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce, and the possession of a firearm or ammunition by any such person shall be presumptive evidence that such firearm or ammunition was shipped or transported or received, as the case may be, by such person in violation of this chapter.

The new statutes, 18 U.S.C. § 922(g) and (h) state:

(g) It shall be unlawful for any person—

(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

(2) who is a fugitive from justice;

(3) who is an unlawful user of or addicted to marihuana or any depressant or stimulant drug (as defined in section 210(v) of the Federal Food, Drug, and Cosmetic Act) or narcotic drug (as defined in section 4731(a) of the Internal Revenue Code of 1954) ; or

(4) who has been adjudicated as a mental defective or who has been committed to a mental institution;

to ship or transport any firearm or ammunition in interstate or foreign commerce.

(h) It shall be unlawful for any person—

(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

(2) who is a fugitive from justice;

(3) who is an unlawful user of or addicted to marihuana or any depressant or stimulant drug (as defined in section 201(v) of the Federal Food, Drug, and Cosmetic Act) or narcotic drug (as defined in section 4731(a) of the Internal Revenue Code of 1954) ; or

(4) who has been adjudicated as a mental defective or who has been committed to any mental institution;

to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

A comparison of the new and old statutes reveals that 15 U.S.C. § 902(e) is identical to the new 18 U.S.C. § 922(g) except that two classifications have been added under the new legislation. 18 U.S.C. § 922(h) carries over both the old classifications of 15 U.S.C. § 902(f) and adds three new ones. For our purposes the new statute adds the classification of persons indicted for a crime punishable by imprisonment for a term exceeding one year which was not in 15 U.S.C. § 902 (f). Also the statutory presumption declared unconstitutional in Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943) is deleted from the new statute. See S.Rep. No. 1097, 90th Cong., 2d Sess., 2 U.S.Code, Cong. & Admin. News, p. 2205 (1968).

4. 18 U.S.C.App. § 1202(a) states:

Any person who—

(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, or

(2) has been discharged from the Armed Forces under dishonorable conditions, or

(3) has been adjudged by a court of the United States or of a State or any political subdivision thereof of being mentally incompetent, or

(4) having been a citizen of the United States has renounced his citizenship, or

(5) being an alien is illegally or unlawfully in the United States,

and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of

spoke of 18 U.S.C. § 922(g) and (h) in determining the proper construction of § 1202(a).[5] Although the Court's remarks concerning § 922(h) are clearly dicta and the question of the reach of this section was specifically left open,[6] the Court's statements are informative because they comport with the accepted interpretation of the predecessor statutes of § 922(h). In *Bass* the Court commented that:

> Title IV [18 U.S.C. §§ 922(g) and (h)] apparently does not reach possessions or intrastate transactions at all, even those with an interstate commerce nexus, but is limited to the sending or receiving of firearms as part of an interstate transportation. 404 U.S. at 342–343, 92 S.Ct. at 520 (footnote omitted).

This interpretation is compatible with what the Court noted in Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), when speaking of 15 U.S.C. § 902(f), the predecessor of 18 U.S.C. § 922(h).

Both courts below held that the offense created by the Act is confined to the receipt of firearms or ammunition as a part of interstate transportation and does not extend to the receipt, in an intrastate transaction, of such articles which, at some prior time, have been transported interstate. The Government agrees that this construction is correct. 319 U.S. at 466, 63 S.Ct. at 1244.

Therefore, we conclude that 18 U.S.C. § 922(h) speaks only of receipt of firearms or ammunition in interstate transportations and does not concern possessions at all. But the construction we place on this statute, which recognizes a distinction between the receipt offenses under 18 U.S.C. § 922(h) and the receipt offenses under 18 U.S.C. App. § 1202(a),[7] and also necessarily differentiates between receipt offenses and possession offenses, does not save the defendant's position. The government's evidence, which established Craven's constructive possession of the revolver, was circumstantial evidence which allowed the jury reasonably to infer that Craven received the firearm. The interstate transportation element of § 922(h) was met by the prosecution's evidence of the very recent Lexington, Kentucky, to Woodlawn, Ohio, transportation of the weapon.[8] Since one cannot possess

---

this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

5. In United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 448 (1971) the Court held that the phrase "in commerce or affecting commerce" in 18 U.S.C.App. § 1202(a), *supra, Note 4*, modifies the offenses of "receiving" and "possessing" as well as that of "transporting" a firearm and therefore that the government must prove as an element of the offense the interstate commerce nexus in all instances.

The Court noted in *Bass* that, according to the legislative history of the Omnibus Crime Control and Safe Streets Act of 1968, Title VII was intended to complement Title IV but whatever reading of 18 U.S.C.App. § 1202(a) was adopted it would be, in part, redundant with 18 U.S.C. § 922(g) and (h). Therefore the Court chose to construe § 1202(a) narrowly.

6. United States v. Bass, 404 U.S. 336, 343 n. 10, 92 S.Ct. 515, 30 L.Ed.2d 448 (1971).

7. *Supra*, note 6 at 343–344 and 350 n. 18, 92 S.Ct. 515.

8. The defendant's reliance on Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943) is misplaced. *Tot* dealt with the statutory presumption (see *supra*, note 3) of the now repealed 15 U.S.C. § 902(f). In the Court's words *Tot* concerned:

> the question of the power of Congress to create the presumption which § 2 (f) declares, namely, that, from the prisoner's prior conviction of a crime of violence and his present possession of a firearm or ammunition, it shall be presumed (1) that the article was received by him in interstate or foreign commerce, and (2) that such receipt occurred subsequent to July 30, 1938, the effective date of the statute. 319 U.S. at 466, 63 S.Ct. at 1244.

The Court determined that the statutory presumption was unconstitutional and in part held that "there seems no reasonable ground for a presumption that its [the firearms] purchase or procurement was

something, either actually or constructively, without receiving it, either actually or constructively [9] (except when the possessor manufactures it himself), receipt under 18 U.S.C. § 922(h)(1) may be shown circumstantially by proving possession, at least where no significant passage of time has elapsed between the interstate transportation and proof of possession, and no intervening intrastate transactions have occurred. Therefore, we find that the district court's refusal to grant a judgment of acquittal on Count IV was correct and that the evidence is sufficient to uphold the verdict on this count.

### Counts V and VI

Count V of the indictment charged Craven with violating 26 U.S.C. §

4704(a) [10] and Count VI alleged violations of 21 U.S.C. §§ 173 and 174.[11] These statutes contain rebuttable presumptions that proof of possession of narcotics is sufficient to sustain a conviction [12] and it is the prosecution's evidence of possession which the defendant claims is insufficient to have allowed these counts to go to the jury.

The government's proof disclosed, and the defendant concedes, that Craven had constructive possession of the Rustic Lane house where the narcotics were found in a secret compartment in the basement stairs. The testimony of Alice Freeman concerning her purchase from the defendant of a white powder in the basement of the house the month before the raid inferentially demonstrated that Craven had access to the

---

interstate rather than in intrastate commerce." 319 U.S. at 468, 63 S.Ct. at 1245.

In the instant case no judicial presumption is created as to the interstate transportation but this element was specifically established by the government's evidence.

9. See United States v. Brown, 472 F.2d 1181 (6th Cir. 1973); United States v. McCreary, 455 F.2d 647 (6th Cir. 1972).

10. 26 U.S.C. § 4704(a) states:

It shall be unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package; and the absence of appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found.

This statute was repealed by Act of Oct. 27, 1970, Pub.L.No.91–513, § 1101(b)(3)(A), 84 Stat. 1292 which became effective the day after the date of the charged offense. However, the savings clause of Pub.L.No.91–513 states:

Prosecutions for any violations of law occurring prior to the effective date of section 1101 [the first day of the seventh calendar month that begins after Oct. 26, 1970] shall not be affected by repeals or amendments made by such section or section 1102 or abated by reason thereof.

11. 21 U.S.C. § 173 prohibited the importation of narcotic drugs, made certain exceptions for crude opium and coca leaves,

prohibited importation of crude opium for the manufacture of heroin and provided for forfeitures.

21 U.S.C. § 174 sets penalties for bringing narcotic drugs into the United States contrary to law, for conspiring to commit unlawful acts concerning such narcotics and made unexplained possession of narcotics sufficient evidence for conviction.

These two statutes were repealed by Act of Oct. 27, 1970, Pub.L.No.91–513, § 1101(a)(2)(4), 84 Stat. 1291 which became effective the day after the date of the charged offenses. The savings clause of Pub.L.No.91–513 also applies to these two statutes, supra, note 10.

12. The statutory presumption contained in 26 U.S.C. § 4704(a) is set forth in note 10, supra. The statutory presumptions of 21 U.S.C. § 174, which apply to § 173 as well, state:

Whenever on trial for a violation of this subdivision the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury.

Whenever on trial for a violation of this subsection the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury.

basement area where the secret compartment was located. Her testimony also described a conversation she had with Craven after the police raid on the house in which the defendant told her the government did not have a case against him and that he should have moved the "stash" earlier. Although the defendant's use of the word "stash" could refer to the illegal weapons, the narcotics or both, the statement could reasonably be construed to mean the narcotics, especially since the defendant had previously sold this witness a white powder in the basement of the house and had not dealt in firearms with her. Added to these facts, the illegal weapons named in Counts II and III of the indictment were found in the secret compartment with the heroin. We have already determined that the evidence was sufficient to uphold a finding of constructive possession of these firearms. Therefore, we hold that the evidence is sufficient to support the conclusion that Craven had access to and dominion and control over the secret compartment and its contents. The motion for a judgment of acquittal was properly denied on these counts.

## II

The defendant attacks the constitutionality of 18 U.S.C. § 922(h)(1)[13] on several grounds. First, it is said that the classification contained in the statute prohibiting a person under indictment from receiving a firearm shipped in interstate commerce is irrational and unjustified and deprives defendant of due process of law under the Fifth Amendment. Second, it is argued that the statute violates the Fifth Amendment's due process clause because the introduction of an indictment for an offense other than the crime of which the defendant is accused is prejudicial and denies defendant a fair trial.

The defendant's first argument is essentially that § 922(h)(1) segregates those persons who may receive firearms in interstate commerce from those individuals who may not. By including in the second category persons who are merely "under indictment for . . . a crime punishable by imprisonment for a term exceeding one year"[14] Congress has unjustifiably discriminated against indicted persons, who have the same status in the eyes of the law because of the presumption of innocence as persons not involved in the criminal process. Therefore, since both innocent persons and indicted persons have the same legal status no basis exists for the statute's discrimination.

The Fifth Amendment does not contain an explicit equal protection clause as does the Fourteenth Amendment applicable on its face only to the states, but statutory classifications may be so unjustified as to be violative of the due process clause of the Fifth Amendment. Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Schneider v. Rusk, 377 U.S. 163, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964); Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Consequently, the due process clause of the Fifth Amendment provides the same basic safeguards as the equal protection clause and the general principles of the latter apply to the former.

It is now well settled that when legislative classifications affect fundamental rights a closer scrutiny of them is required and an overriding or compelling interest must appear to support the legislative classifications. *See e. g.*, Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968); Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967). However, in dealing with social or economic legislation or areas where fundamental rights are not involved a greater lati-

---

13. *Supra*, note 3.

14. 18 U.S.C. Sec. 922(h)(1).

tude is afforded legislative classifications and a statutory classification will not be set aside if a rational basis exists to sustain it. *See, e. g.*, Hurtado v. United States, 410 U.S. 578, 93 S.Ct. 1157, 35 L.Ed.2d 508 (1973); McGinnis v. Royster, 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973); Lindsey v. Normet, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed. 2d 36 (1972); Schilb v. Kuebel, 404 U.S. 357, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971); Dandridge v. Williams, 397 U. S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); McGowan v. Maryland, 366 U. S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 493 (1961).

In United States v. Thoresen, 428 F.2d 654 (9th Cir. 1970), an opinion with which we fully agree, the Ninth Circuit determined that shipping or transporting firearms in interstate or foreign commerce under the now repealed 15 U.S.C. § 902(e) was not a basic or fundamental right. Although 18 U.S.C. § 922(h)(1) does not proscribe shipping or transporting firearms (*see* 18 U.S.C. § 922(g)) but instead prohibits receiving firearms in interstate commerce, it follows, a fortiori, from the *Thoresen* holding that receiving firearms shipped in interstate commerce is not a basic constitutional right. Therefore, 18 U.S.C. § 922(h)(1) must be upheld if the classification scheme has any rational basis to support it.

The Congressional findings and declaration of purpose of Title IV of the Omnibus Crime Control and Safe Streets Act of 1968 [15] and the legislative history of this title [16] amply demonstrate the nexus between violent criminal activity and the use of firearms. It was eminently reasonable for Congress to conclude that the indictment of an individual for a crime punishable by imprisonment for a term exceeding one year is so often indicative of a propensity for vio-

lence that the indictment classification of 18 U.S.C. § 922(h)(1) was justified in the public interest. Since Title IV of the Act is a modified and more comprehensive version of the Federal Firearms Act of 1938 and its subsequent amendments,[17] what the Ninth Circuit stated in *Thoresen* concerning this statutory scheme is equally applicable to § 922(h)(1).

Having in mind the objectives of Congress in enacting this legislation, as discussed above, we find no warrant for a judicial determination that the indictment classification effectuated by section 2(e) is so lacking in rationality that it offends due process. . . . [W]e think it not unreasonable for Congress to conclude that there is considerable likelihood that one indicted for such an offense has a propensity to misuse firearms. In so deciding we note that this conclusion by Congress, as crystallized in section 2(e), is not forever conclusive upon a person so indicted. The prohibitory effect of the classification disappears as soon as the indicted person obtains dismissal of the indictment or acquittal on the charge.

. . . While the provision in question does forbid indicted persons from transporting [receiving] firearms in interstate commerce while the indictment is outstanding, the indictment serves only as a temporary block pending disposition of the criminal proceedings in which the indictment was filed. Bearing in mind that we are not dealing with statutory restrictions upon such constitutionality sensitive activities as free speech or the right to vote, we think Congress may, in pursuit of the sound objectives of the legislation, require indicted persons to tolerate this temporary limitation upon their right to transport

---

15. Omnibus Crime Control and Safe Streets Act of 1968, Pub.L.No.90–351, § 901, 82 Stat. 225.

16. S.Rep.No.1097, 90th Cong., 2d Sess., 2 U.S.Code, Cong. & Admin.News pp.

2112, 2113–2114, 2163–2169, 2197–2200, 2205 (1968).

17. *Supra*, note 3.

weapons in interstate commerce. 428 F.2d at 662.

*See* Williams v. United States, 426 F.2d 253 (9th Cir. 1970); United States v. DePugh, 266 F.Supp. 453 (W.D.Mo. 1967), aff'd, 393 F.2d 367 (8th Cir. 1968).

■ The defendant's second argument, that this statute violates the due process clause of the Fifth Amendment because the introduction of an indictment of an unproven offense, other than the charge for which the defendant is on trial, is prejudicial and detracts from the presumption of innocence, is also untenable. This same contention was decided adversely to the defendant in United States v. Thoresen, *supra*, where the Ninth Circuit stated:

> [The defendant] came to this criminal trial with a constitutionally-protected presumption of innocence. See Deutch v. United States, 367 U.S. 456, 471, 81 S.Ct. 1587, 6 L.Ed.2d 963 (1961). But section 2(e) [§ 922(h)(1)] does not purport to effect the presumption of innocence which cloaks all defendants in federal criminal proceedings. It does not authorize the fact finder at the criminal trial to infer guilt under the Federal Firearms Act [§ 922(h)(1)] from the existence of a prior indictment or even to discount the credibility of a witness because of such an indictment. Instead, as applied to [the defendant] it represents nothing more than a Congressional determination that one who is under indictment for crimes . . . ought not to transport [receive] firearms in interstate commerce unless and until the indictment is dismissed or an acquittal is obtained.
>
> There inheres in this determination a Congressional finding that persons under indictment for such offenses may have a propensity for misusing firearms. But it is a legislative finding operative only in formulating a statutory scheme for controlling misuse of firearms. . . . In our

opinion, this provision of the statute does not adversely affect the presumption of innocence which prevails at federal criminal trials and which is guaranteed by the due process clause of the Fifth Amendment. 428 F.2d at 661.

We have carefully considered the other contentions raised by the defendant and find them without merit.

Affirmed.