762 F.2d 1012
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
United States of America, Plaintiff-Appellee,
v.
Fred Farber, Defendant-Appellant.
 No. 83-1792
 United States Court of Appeals, Sixth Circuit.
 4/10/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 BEFORE: Contie, Circuit Judge; and Phillips and Celebrezze, Senior Circuit Judges.
 Per Curiam.
 
 
 1
 Defendant-appellant Fred Farber was charged with forty-one counts of mail fraud, wire fraud, and interstate transportation of fraudulently obtained money. Farber was found guilty by a jury of four counts; a mistrial was declared as to the remaining counts. Farber appeals his convictions, asserting that the district court denied improperly his motion for acquittal, that the jury's verdict was not supported by substantial evidence, and that the district court made erroneous and prejudicial evidentiary rulings. After considering each contention, we affirm.
 
 
 2
 In reviewing a motion for a judgment of acquital, the evidence and all reasonable inferences drawn from it must be viewed in the light most favorable to the government. E.g., United States v. Craven, 478 F.2d 1329, 1333 (6th Cir.), cert. denied, 414 U.S. 866 (1973). If the evidence is such that a reasonable mind might fairly find guilt beyond a reasonable doubt, the denial of a motion for a judgment of acquittal must be sustained. Id. A jury verdict must be upheld if, taking the view most favorable to the government, substantial evidence supports it. Glasser v. United States, 315 U.S. 60, 80 (1942). Viewing the evidence in accordance with these standards, we conclude that the district court's denial of the motion for acquittal and the jury's verdict must be upheld.
 
 
 3
 Farber's convictions for transporting in interstate commerce money in excess of $5,000 by means of false and fraudulent pretenses in violation of 18 U.S.C. Sec. 2314 and committing wire fraud in contravention of 18 U.S.C. Sec. 1343 arose from the following events. Farber and his nephew, Howard Farber, were both employed at the First National Monetary Investment Company where Farber was an account executive. In the course of his employment, Farber sold precious metals contracts to customers. He persuaded Harry Ryba to become a client of First Monetary; Ryba made a $373,000 purchase.
 
 
 4
 Subsequently, discussions arose between Farber and Ryba concerning the possibility that Ryba would finance Farber and his nephew, Howard, in setting up a new business. Both Ryba and Farber testified that four or five discussions took place. However, while Farber testified that Ryba agreed to invest money in a new business, Ryba testified that he never made a commitment to invest. Farber asserted at trial that he transferred and wired $50,000 from Ryba's account at First Monetary into his own with Ryba's permission. On the other hand, Ryba testified that, unknown to him at the time, his account with First National had an excess of funds and, moreover, that he did not give Farber permission to use this money to establish a new business. Ryba's testimony was corroborated by Howard Farber, who testified that Ryba 'didn't have much interest' in financing the proposed business.
 
 
 5
 Farber asserts that his convictions for violations of 18 U.S.C. Secs. 1343 and 2314 were improper because the government failed to establish intent. Intent to defraud is an element of both 18 U.S.C. Sec. 1343, United States v. Griffin, 699 F.2d 1102, 1105-06 (11th Cir. 1983), and 18 U.S.C. Sec. 2314, United States v. Walls, 577 F.2d 690, 696 n.7 (9th Cir.), cert. denied, 439 U.S. 893 (1978). We note, however, that a jury may infer intent from circumstantial evidence. In this case, sufficient evidence was presented from which a jury could infer intent. In essence, Farber asks this court to make a determination that his testimony was more credible than that of Ryba. This we decline to do. See Glasser v. United States, 315 U.S. 60, 80 (1942). Accordingly, we affirm the convictions based upon violations of 18 U.S.C. Secs. 1343 and 2314.
 
 
 6
 After Farber established his new business, Global Precious Metals Company, he obtained Yolanda Tecson as a client. Farber told Tecson she could purchase precious metals by putting 25% down and paying the balance within ninety days. Tecson sent Farber $3,250 as a down payment for certain metals and paid the balance, over $9,000, within ninety days. Although Farber informed Tecson she would receive her order in a matter of weeks, she never received the metals ordered. Moreover, Farber had initially told her that he had the metals in stock; he later indicated that he was attempting to fill her order. Howard Farber testified that his uncle misrepresented the nature of the business to customers. For example, although Farber told customers he could 'lock in' the price of metals, he never took the requisite steps to do so.[1] Moreover, according to Howard, Global never purchased the metals for clients who put down 25%. In fact, customers' money was placed in Farber's general operating account and was not maintained in a separate account.
 
 
 7
 Farber was convicted of causing Tecson to mail in interstate commerce the check in excess of $9,000 (Tecson resided in Ohio; Global was located in Michigan) in violation of 18 U.S.C. Sec. 2314 and with knowingly mailing to Tecson a letter containing a purchase order receipt showing the purchase of $4,500 in gold in violation of 18 U.S.C. Sec. 1341. The plain language of both statutes requires Farber to have intended to defraud Tecson. See United States v. Rabinowitz, 327 F.2d 62, 76-77 (6th Cir. 1964). Farber asserts that no intent was shown and that he always intended to perform in good faith. However, considering the testimony of both Tecson and Howard Farber, we conclude that, when viewed in the light most favorable to the government, the convictions must be sustained.
 
 
 8
 Finally, Farber asserts that the district court made improper evidentiary rulings. Farber contends that the district court failed to allow him to impeach Ryba for interest and bias through the testimony of Farber's brother-in-law, Mayer Gordon, and Michael King, an officer at First Monetary.
 
 
 9
 At trial, Farber attempted to impeach Ryba through Mayer Gordon. Defense counsel sought to question Gordon concerning a conversation which Gordon had with Ryba. Allegedly, statements made by Ryba to Gordon would have shown that he initially authorized the transfer of money to Farber, but later withdrew the authorization due to threats of a lawsuit by First Monetary. Extrinsic evidence is admissible to establish a prior inconsistent statement of a witness if the impeached party is given an opportunity to explain or deny the statement. Fed. R. Evid. 613(b). Although the party being impeached does not have to be given a prior opportunity to explain or deny the statement, e.g., United States v. Praetorius, 622 F.2d 1054, 1065 (2d Cir.), cert. denied sub nom., Label v. United States, 449 U.S. 860 (1980); United States v. Barrett, 539 F.2d 244, 254-56 (1st Cir. 1976); Fed. R. Evid. 613(b) advisory committee note, some opportunity to explain or deny the statement is still required, Fed. R. Evid. 613(b). In this case, Ryba was never questioned concerning any statement he made to Gordon. Consequently, the introduction of a prior inconsistent statement made by Ryba to Gordon would have been improper. Accordingly, the district court refused properly to allow Gordon's testimony.[2]
 
 
 10
 Similarly, Farber contends that the district court limited improperly his questioning of Michael King. Defendant's counsel sought to show that First Monetary Company had threatened Ryba with a lawsuit for giving Farber the $50,000. Specifically, King was questioned as to whether First Monetary or anyone in an executive capacity at First Monetary was upset that Farber started his own business. Farber argues that these questions were relevant to establish Ryba's possible bias and interest in that they show that it was likely that Ryba was threatened with a lawsuit due to his financing of Global. Both of these questions, however, are plainly irrelevant. Fed. R. Evid. 401. Whether First Monetary was 'angry' at Ryba or whether any person in the executive capacity was 'upset' with Ryba has no bearing on whether Ryba ever was in fact threatened with a lawsuit.[3] Accordingly, the trial court excluded properly these questions.
 
 
 11
 In conclusion, we hold that the trial court denied correctly defendant's motion for acquittal. Further, in our view, substantial competent evidence supports the jury's verdict. Finally, we find no error with the district court's evidentiary rulings. Accordingly, the convictions are affirmed.
 
 
 
 [1]
 According to Howard Farber, for the deferred payment program to work properly, either the precious metals ordered had to be in stock at the time the initial down payment was made or 100% of the total payment price had to be in a segregated account. Further, Howard Farber testified that this deferred payment plan could only be profitable if the market decreased; if, however, the market increased, money from new clients would be essential to cover the difference between the 'locked in' price and the higher market price ninety days later
 
 
 [2]
 Defendant also asserted that Gordon's testimony was part of the 'res gestae.' This contention is clearly without merit
 
 
 [3]
 On cross examination, Ryba was asked whether King had ever threatened him with a lawsuit for aiding Farber in establishing Global Precious Metals; Ryba responded negatively. Consequently, this testimony could have been impeached properly if defendant's counsel asked King directly if he had ever threatened Ryba with a lawsuit. Such questioning, however, was not attempted in this case