979 F.2d 852
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
George Douglas FITZPATRICK, Defendant-Appellant.
 No. 92-5329.
 United States Court of Appeals, Sixth Circuit.
 Nov. 10, 1992.
 
 Before: RALPH B. GUY, JR. and BATCHELDER, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 RALPH B. GUY, JR., Circuit Judge.
 
 
 1
 Defendant, George Douglas Fitzpatrick, appeals his conviction and sentence. A jury found defendant guilty of being a felon in possession of a firearm, in violation of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 922(g)(1). The court, finding that defendant had five prior violent felony convictions, sentenced defendant to 15 years imprisonment, pursuant to 18 U.S.C. § 924(e).
 
 
 2
 Defendant claims that there was insufficient evidence of possession to support his conviction. He also avers that the prior convictions upon which the court relied were invalid and that three of them do not constitute violent felonies within the meaning of § 924(e). Based upon a careful review of the record, we find the evidence insufficient to support the conviction and reverse. The reversal of the conviction makes it unnecessary to consider the other issues raised by the defendant.
 
 I.
 
 3
 The only issue at trial was whether defendant possessed the firearm. Four witnesses testified: Jeff Hargis, Fitzpatrick's employer; Hargis' wife, Vicki; defendant's girlfriend, Barbara Fallin; and police officer Williams.
 
 
 4
 Jeff Hargis testified that defendant had called him about receiving a loan, using a gun as collateral. Hargis was a contractor who did not pay his laborers, including defendant, until completion of each job. Since he was unable to pay defendant at regularly scheduled intervals, Hargis often loaned Fitzpatrick money in advance of his salary, accepting various items as collateral. Barbara Fallin testified that defendant, who was temporarily staying with her and her roommate Frank, told her that Frank had a gun and wanted him to sell it. Defendant planned to take Frank to the Hargis' residence to see if Jeff was interested.
 
 
 5
 On September 29, 1990, defendant went to Hargis' 22-acre farm on which the Hargises maintain a wild animal educational park. There were many people at the park, both workers and park visitors. Hargis, busy dressing a deer, saw defendant and asked his wife, Vicki, to see what defendant wanted. Hargis had forgotten that defendant had called earlier about a loan.
 
 
 6
 Vicki Hargis testified that Fitzpatrick was accompanied by a man named Frank. Defendant told her that Frank was a friend and needed $300, and that Frank was the roommate of defendant's girlfriend, Barbara, and needed the money to prevent their eviction. Frank carried a gun, which he said he owned, and handed it to Vicki. Frank assured her that it was not stolen. Being unfamiliar with Frank, Vicki asked defendant to step inside the house. She asked defendant if the gun was stolen. Fitzpatrick indicated no knowledge of the gun being stolen, and stated that Frank claimed ownership of the gun.
 
 
 7
 Carrying the gun, Vicki went with defendant into an office inside the house and pulled a reference book to see if the gun was valued at more than $300. Finding the gun at least that valuable, she gave defendant $300 and they went outside. She left the gun on top of the book, opened to the pertinent page, so that her husband, still engaged in dressing the deer, could easily confirm the gun's value. Mrs. Hargis reminded Fitzpatrick that the money was a loan for which he was responsible. Once outside, Fitzpatrick handed the money to Frank.
 
 
 8
 Jeff Hargis testified that after his wife was with defendant for some time, she called him into their office to check the value of the gun. Entering the office, he saw defendant alone in the room and the gun lying on the desk. He confirmed the firearm's worth, accepted defendant's statement that it was not stolen, and agreed to extend the loan. Hargis explained that he was extremely preoccupied at the time of defendant's visit and was unable to remember the details of the event. He could not remember seeing defendant come onto the property with anyone or whether he or his wife gave Fitzpatrick the $300.
 
 
 9
 Several days after the transaction between Fitzpatrick and Hargis, Fallin spoke with her mother, Dorothy Harkness, who told Fallin that her gun had been stolen and described it. Fallin passed the information on to defendant who was concerned that Frank's gun matched Fallin's description of her mother's gun. Fitzpatrick called Harkness and obtained the serial number of the gun and then called Hargis and confirmed he had Harkness's gun. Fitzpatrick then conveyed this information to Harkness, who in the company of Fitzpatrick and Fallin, reported the theft to the police. Defendant gave a voluntary statement to the police at that time.
 
 
 10
 Fitzpatrick told Smyrna Police Sergeant Williams that Frank Johnson had asked him to sell the gun; he sold it to Hargis for $300 and kept $25 for himself. Sgt. Williams had no idea how the police learned that the gun was stolen or came to be in Hargis' possession. She did not investigate the theft and never spoke to Harkness.
 
 
 11
 Defendant maintains that the evidence shows that he brokered a transaction but never had actual or constructive possession of the firearm. The government contends that Jeff and Vicki Hargis' testimony was contradictory, and that a rational juror could believe that Frank Johnson was not at Hargis' ranch on September 29. Even if Johnson was involved, the government argues, the jury could infer possession from defendant's participation in the transaction.
 
 II.
 
 12
 One who lacks actual possession but " 'knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others[,]' " has constructive possession. United States v. Moreno, 933 F.2d 362, 373 (6th Cir.) (citing United States v. Craven, 478 F.2d 1329, 1333 (6th Cir.), cert. denied, 414 U.S. 866 (1973), cert. denied, 112 S.Ct. 265 (1991)). Possession may be proved by circumstantial evidence. Craven, 478 F.2d at 1333. The evidence need not "remove every reasonable hypothesis except that of guilt." Id. Our review is limited. After viewing the evidence in the light most favorable to the government, we must sustain the conviction if "any rational trier of fact could have found ... beyond a reasonable doubt" that defendant possessed the firearm. Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 13
 Applying this standard, we find the evidence to be insufficient to support a conviction. Although the government contends that its theory of the case was that defendant was in actual possession of the firearm, we can not find credible evidence supporting this theory. Neither Jeff nor Vicki Hargis testified that Fitzpatrick was in actual possession of the gun, and Vicki Hargis specifically testified that she took the gun directly from Frank Johnson. Additionally, there was no testimony from Fallin that she had ever seen defendant in possession of the gun.
 
 
 14
 Courts have held that under certain circumstances the brokering of weapons or drugs may constitute constructive possession. See United States v. Manzella, 791 F.2d 1263, 1266-67 (7th Cir.1986) (discussing cases); United States v. Black, 472 F.2d 130 (6th Cir.1972), cert. denied, 411 U.S. 969 (1973); United States v. Virciglio, 441 F.2d 1295 (5th Cir.1971). In Black, for example, defendant was a friend of a firearm owner who, acting as a broker for its sale, located a buyer, and transferred the weapons to him. We held that defendant had actual possession during the sale and constructive possession, as broker, of the weapon sold. Id. at 131.
 
 
 15
 Defendant claims that unlike the defendant in Black, he lacked actual possession, was not the only party present when the sale was completed and delivery took place, nor did he negotiate the price. We agree that Black as well as the other cases relied upon by the government are distinguishable. There is nothing in the record from which a juror could conclude beyond a reasonable doubt that Fitzpatrick's role was other than that of accommodating a friend who needed money by, in effect, vouching for the transaction with his employer and promising to repay the money that was loaned on the firearm.
 
 
 16
 Furthermore, although one may suspect that there is more to this entire scenario than meets the eye, the government made no effort to prove that to be the case. Fitzpatrick's conduct after learning of the theft of the firearm from Harkness was completely consistent with that of an innocent person. He called Hargis to confirm that the gun he had sold was in fact Harkness's firearm, and after ascertaining that that was the case, cooperated in reporting this matter to the police and making a full and complete voluntary statement. Although at oral argument the government suggested that this was part of a clever cover up, they also conceded that there is no evidence in the record to support that supposition.
 
 
 17
 Recognizing the seriousness of firearms offenses, this circuit, as well as the other circuits, has pushed the doctrine of constructive possession to the limit in cases involving firearms. This case goes beyond, however, any legitimate usage of the doctrine of constructive possession in a criminal prosecution.
 
 
 18
 REVERSED and REMANDED.