105 F.3d 659
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jackie Wayne McBEE, Defendant-Appellant.
 No. 95-6658.
 United States Court of Appeals, Sixth Circuit.
 Jan. 10, 1997.
 
 Before: LIVELY, NELSON, and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 The defendant, Jackie Wayne McBee, appeals from the judgment imposed following his jury conviction on one count of being a felon in possession of a firearm and one count of being a felon in possession of ammunition, both in violation of 18 U.S.C. §§ 922(g) & 924(e). He argues that there was insufficient evidence to support his convictions, and that the district court erroneously enhanced his sentence for using or possessing a firearm in connection with a crime of violence. We will affirm.
 
 I.
 
 2
 McBee met one Jeffrey Dean Mason in 1987 while both were serving time in a Tennessee state prison. In May 1992, after Mason had been released from prison, Mason received a collect call from McBee. McBee had escaped from prison, and wanted assistance from Mason in getting money to buy a car and leave town.
 
 
 3
 Mason picked McBee up at a motel in Lenoir City, Tennessee the day after McBee called, and saw that McBee had a .38 caliber firearm with the serial numbers removed, along with fifty rounds of ammunition. Over the next several days, Mason drove McBee around Knoxville while McBee robbed various retail establishments.
 
 
 4
 On the morning of May 15, Mason picked up McBee and Ronald Womack, a man that Mason had met in 1984 when both were serving time in prison. McBee announced his intention of robbing the Charter Federal Savings Bank in Knoxville, and further announced that both Mason and Womack would have to assist.
 
 
 5
 Womack and McBee entered the bank, while Mason waited outside in his car. Following the robbery, one teller told investigators that although she did not observe the two robbers enter the bank, she heard one say, "Get down, don't touch anything, do what I say or I'll shoot you." One robber, who carried a small handgun, then emptied her top drawer of its cash, while the other emptied the drawers of two other tellers. The first teller later identified McBee from a photographic lineup as that robber, specifically noting a similarity in hairlines. The other two tellers, however, picked Jeffrey Mason rather than McBee out of the same lineup.
 
 
 6
 When McBee and Womack exited the bank and got into Mason's car, they had approximately $12,000. The three evenly divided the money, and Mason dropped McBee and Womack off near the house of McBee's girlfriend, Joy Bryant.
 
 
 7
 That evening, Knoxville patrol officer Gary Price observed a man named Clyde Williams in an alley next to a white Monte Carlo automobile, leaning into the passenger window. Aware of an outstanding arrest warrant on Williams, Price turned his car around to go back and arrest Williams. After Price successfully placed Williams under arrest, he turned back to the Monte Carlo, where he observed that "Joy Bryant was the driver and ... Mr. McBee was the passenger in that vehicle." Price called for back-up, and then he and the new officer arrested McBee. When Price performed a pat-down, he found three .38 caliber rounds of ammunition in McBee's left front pocket, along with $963 in cash. The second officer put McBee in his cruiser and left the scene.
 
 
 8
 Meanwhile, Price asked Bryant if he could search the vehicle, and she assented. Price found a black Smith & Wesson revolver, fully loaded, with its serial numbers removed, underneath and toward the back of the driver's seat; based on the positioning of the weapon and the layout of the car, Price concluded that the passenger--that is, McBee--would have had more direct access to the gun than the driver, "because all he would have had to have done was reach in the gap behind the seat." In a later telephone conversation with Price, Bryant told Price that the gun was not hers, as did Bryant's mother, the owner of the car. During the interrogation of McBee, an officer asked him if the gun was his. He allegedly replied: "I'm not going to say that gun is mine, but if it was, it was not for the police, but it was for some other guys who were after me."
 
 
 9
 The defendant was indicted on one count of being a felon in possession of a firearm, specifically, a Smith & Wesson, Airweight, .38 caliber, five-shot revolver with a removed serial number, in violation of 18 U.S.C. §§ 922(g) & 924(e), and one count of being a felon in possession of ammunition, specifically, a quantity of .38 caliber ammunition, also in violation of 18 U.S.C. §§ 922(g) & 924(e).
 
 
 10
 The defendant was convicted following a jury trial. The presentence report prepared on McBee reported that for a violation of section 922(g), a base offense level of 24 applied, pursuant to U.S.S.G. § 2K2.1(a)(2). It also stated that a four-level specific offense characteristic enhancement applied under U.S.S.G. § 2K2.1(b)(5), because the firearm was possessed in connection with a crime of violence, namely, the bank robbery. The resulting total offense level of 28 was supplanted, however, by an offense level of 34 because McBee qualified as an armed career criminal within the meaning of U.S.S.G. § 4B1.4(b)(3)(A).
 
 
 11
 McBee filed written objections to the PSR, principally disputing the allegations regarding his involvement in the bank robbery and requesting "that the court require a clear and convincing standard" with respect to the government's proof of the bank robbery relevant conduct allegations.
 
 
 12
 At sentencing, the government presented additional evidence of McBee's involvement in the Charter Federal bank robbery. An ATF special agent compared photographs of McBee with bank surveillance photographs, and noted the similarity in hairline and bald spot, and also noted that McBee wore two distinctive rings on his left hand that appeared in the bank photographs. Mason also testified in detail about McBee's role in the robbery. Although Womack testified, he denied even knowing McBee, let alone participating in the bank robbery.
 
 
 13
 The district court, applying a preponderance of the evidence standard, concluded that McBee had used the gun in connection with the bank robbery, based on the testimony of Jeffrey Mason; the statements of the bank teller who identified McBee; and the surveillance photographs, showing McBee's rings and hairline. The district court sentenced McBee at the highest end of the applicable range, to 327 months' confinement on both counts, to be served concurrently. McBee filed this timely appeal.
 
 II.
 A.
 
 14
 McBee first challenges his convictions on sufficiency of the evidence grounds. Although it is somewhat unclear whether McBee intends to challenge his ammunition conviction in addition to the gun conviction, we will assume that to be the case.
 
 
 15
 This court reviews a claim of insufficient evidence using the same standard as the district court. United States v. Beddow, 957 F.2d 1330, 1333 (6th Cir.1992).
 
 
 16
 When reviewing a claim of insufficient evidence, we examine the evidence in the light most favorable to the government and draw all inferences in the government's favor in order to determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt.
 
 
 17
 United States v. Riffe, 28 F.3d 565, 567 (6th Cir.1994).
 
 
 18
 To support a conviction under 18 U.S.C. § 922(g)(1), the evidence must be sufficient to satisfy three elements: (1) that the defendant was convicted of a felony punishable by imprisonment for more than one year; (2) that following his conviction, the defendant knowingly possessed the firearm specified in the indictment; and (3) that the firearm specified in the indictment travelled in or affected interstate commerce. See 18 U.S.C. § 922(g); United States v. Moreno, 933 F.2d 362, 372 n. 1 (6th Cir.1991). McBee challenges only the second element, arguing that the evidence was insufficient to show that he possessed the gun, because the evidence was merely circumstantial and speculative; he suggests, too, that the police should have investigated whether Clyde Williams was the owner of the gun.
 
 
 19
 "Both actual and constructive possession satisfy the possession element for purposes of 18 U.S.C. § 922(g)." United States v. Bingham, 81 F.3d 617, 634 (6th Cir.1996) (citing United States v. Craven, 478 F.2d 1329, 1333 (6th Cir.1973)). Actual possession exists when a person has immediate possession or control of an object. See Craven, 478 F.2d at 1333. " 'Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.' " Moreno, 933 F.2d at 373 (quoting Craven, 478 F.2d at 1333); see United States v. Clemis, 11 F.3d 597, 601 (6th Cir.1993).
 
 
 20
 Any challenge to McBee's section 922(g) conviction for possession of ammunition must certainly fail because the evidence plainly demonstrated that he actually possessed three rounds of ammunition in his pocket. It is not necessary even to consider, therefore whether there was adequate evidence to establish his constructive possession of a black leather jacket found in the Monte Carlo, in which additional ammunition was found.
 
 
 21
 McBee's challenge to his firearm conviction must also fail. The testimony of the officer that the location of the weapon was such as to make it most accessible to the passenger of the car, namely, McBee, is sufficient circumstantial evidence to establish constructive possession. McBee's alleged statement to the agent, while not actually admitting the gun was his, "but if it was, it was not for the police," also qualifies as circumstantial evidence of a knowing intention to exercise dominion and control over the gun.
 
 B.
 
 22
 The defendant's sentencing claim comprises two arguments. First, he contends that the trial court should have applied a clear-and-convincing burden of proof, rather than a preponderance standard, to the relevant conduct issue, because the latter standard "did not adequately protect the defendant's due process rights." Alternatively, he argues that even under a preponderance standard, there was insufficient evidence that he participated in the bank robbery.
 
 
 23
 The Sentencing Guidelines prescribe the following offense level in U.S.S.G. § 4B1.4(b)(3)(A):
 
 
 24
 34, if the defendant used or possessed the firearm or ammunition in connection with a crime of violence or controlled substance offense, as defined in § 4B1.2(1)....
 
 
 25
 Section 4B1.2 defines "crime of violence" as "any offense under federal or state law punishable by imprisonment for a term exceeding one year that ... has as an element the use, attempted use, or threatened use of physical force against the person of another, or ... involves conduct that presents a serious potential risk of physical injury to another." The application notes specify that robbery is a "crime of violence." U.S.S.G. § 4B1.2, comment. (n. 2); see United States v. Maddalena, 893 F.2d 815, 819 (6th Cir.1989). In considering sentencing decisions under U.S.S.G. § 4B1.4, we review questions of law de novo, and questions of fact only for clear error. See United States v. Graves, 60 F.3d 1183, 1185 (6th Cir.1995).
 
 
 26
 It is not necessary that a defendant have been actually convicted of a crime of violence to receive the enhancement under 4B1.4, so long as "a crime of violence was in fact committed." United States v. Rutledge, 33 F.3d 671, 673 (6th Cir.1994). With regard to the determination whether the crime was in fact committed, this court has repeated on multiple occasions that the government need only prove the necessary facts by a preponderance of the evidence, see, e.g., United States v. Hicks, 4 F.3d 1358, 1364-65 (6th Cir.1993), and has specifically rejected the type of due-process argument put forth by the defendant here, see, e.g., United States v. Hill, 973 F.2d 459, 462 (6th Cir.1992) (citing McMillan v. Pennsylvania, 477 U.S. 79, 91 (1986)). Indeed, the court has specifically reaffirmed the application of the preponderance standard in the context of 4B1.4. Rutledge, 33 F.3d at 673.
 
 
 27
 Thus, McBee's burden of proof argument is wholly without merit. As the government points out, there was ample evidence to support the district court's finding that McBee was a participant in the Charter Federal bank robbery, and that he used the gun he was convicted of possessing in connection with that robbery. The mere fact that evidence exists that contradicts or challenges the supporting evidence obviously does not render the district court's findings clearly erroneous.
 
 III.
 
 28
 AFFIRMED.