Defendant-appellant, Lamar M. Briggs, appeals his conviction in the Butler County Court of Common Pleas for possession of cocaine and illegal use or possession of drug paraphernalia. We affirm.
On October 16, 1997, following a search of the residence of appellant's girlfriend, Carlisia Payne, the police seized a package containing 247.65 grams of cocaine and drug paraphernalia. Appellant was eventually arrested and subsequently indicted on one count of possessing more than one hundred grams but less than five hundred grams of cocaine, a violation of R.C. 2925.11(C)(4)(d), and one count of illegal use or possession of drug paraphernalia, a violation of R.C.2925.14(C)(1).[1] Appellant pled not guilty to the charges. The case was tried to a jury on April 28 and 29, 1998.
At trial, plaintiff-appellee, the state of Ohio, presented the testimony of a U.S. postal inspector and three police officers assigned to the Middletown Police Department Special Operations Unit who took part in appellant's apprehension and arrest. U.S. Postal Inspector Donald R. Filer testified that on October 16, 1997, he became suspicious of an express mail package sent from Miami, Florida and addressed to Carlisia Payne at Payne's address in Middletown, Ohio. Filer received a positive alert on the package from a narcotics-detecting dog and obtained a federal search warrant. Upon opening the package, Filer discovered a triple beam scale, several small plastic bags, a bag of latex gloves, an animal cracker box with a false bottom, and a white powdery substance with chunks which field tested positive for cocaine.[2]
Filer contacted Detectives Steve Ezersky, Larry Fultz, and Thomas McIntosh of the Middletown Police Department Special Operations Unit and it was decided that a controlled delivery of the package and its contents would be made to Payne. The package was resealed after inserting a transmitter which would send a signal after the package was opened. A police surveillance team was set up, and Filer, posing as a mailman, delivered the package to Payne's address between 5:30 and 6:00 p.m. The package was signed for and taken into the residence by a twelve-year-old girl, Shayla Henderson, who represented that she was the addressee, Payne. Henderson is Payne's niece. The detectives watched Filer deliver the package and waited several minutes for the signal indicating the package was being opened. When no signal was received, they decided to execute a search warrant obtained earlier, to prevent the cocaine from being removed from Payne's residence without their knowledge. The detectives entered the residence, discovered that Henderson and two small children were the only occupants, and found the package unopened in a closet. The package was seized as well as appellant's wallet, which was found in a closet in the master bedroom upstairs and which contained a Florida driver's license. Payne then arrived and she, Henderson, and a woman who was with Payne, were taken to the police station for questioning.
At about ten o'clock that evening, appellant arrived at the police station inquiring about Payne and his wallet. The detectives testified that based upon their interview of Payne and the recovery of appellant's wallet at Payne's residence, the focus of the investigation had by then shifted from Payne to appellant. Detective Ezersky testified that appellant's interview started at about 11:00 — 11:30 p.m. All three detectives testified that appellant waived his Miranda rights and initially denied knowing anything about the package or its contents. Later on, however, appellant admitted being in Florida the week before, and while there, purchasing a set of triple beam scales and arranging for a friend of his to send the scale and about six ounces of cocaine via U.S. mail to Payne. During the interview, appellant stated that he had instructed Payne to sign for a package she was going to receive. Appellant stated that no explanation as to the contents or use of the package was given to Payne. All three detectives testified that at no time during his interview was appellant told what the package contained.
At about 1:10 a.m. that night, appellant was again informed of his Miranda rights. At 1:19 a.m., appellant wrote out a statement repeating what he had told the detectives. Two detectives testified that appellant was not told what to write.
At the close of the state's case, appellant moved for a judgment of acquittal under Crim.R. 29(A). The trial court denied the motion. Henderson testified that she never received the package from the mailman but that the mailman himself placed the package on a chair. Henderson denied posing as Payne. She testified that she was forced at gunpoint by the police to sign a piece of paper in the name of "Carlisia Payne." Shanera Montgomery, Payne's sister and Henderson's mother, testified that she first came to the police station to pick up her daughter and came back with appellant and one of her sisters at about 10:00 p.m. Montgomery testified that but for ten to fifteen minutes, she and her sister were present when the police interviewed appellant. Montgomery testified that the police told appellant what was in the package, that he knew something about it, and that if he wrote a statement, he would not do any time. Montgomery has known appellant for ten years.
Appellant testified on his own behalf and denied ever selling or buying cocaine. Appellant denied having a friend send him the package to Payne's residence. Appellant also denied knowing anything about the package or its contents. Appellant stated that during the interview, the police told him what the contents of the package were and what to write in his written statement. Appellant testified that while his written statement was false, he had written it because he was tired, the police had told him Payne was about to be booked, and Payne was "going hysterical" about the possibility of not seeing her young child if she was charged.
At the close of the evidence, appellant renewed his motion for judgment of acquittal which the trial court denied. Appellant was subsequently found guilty as charged and sentenced by the trial court. This timely appeal follows in which appellant raises three assignments of error.
In his first assignment of error, appellant argues that his conviction was against the manifest weight of the evidence. Appellant contends that the state failed to prove that appellant "possessed" the cocaine.
In order for a court of appeals to reverse a trial court's judgment on the basis that a verdict is against the weight of the evidence, the appellate court must unanimously disagree with the fact finder's resolution of any conflicting testimony.State v. Thompkins (1997), 78 Ohio St.3d 380, 389. The standard for reversal for manifest weight of evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Thompkins, at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172,175. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
R.C. 2925.01(K) defines possession as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Possession may be actual or constructive. State v.Haynes (1971), 25 Ohio St.2d 264, 269-270. "Actual possession exists where circumstances indicate that one has or had an item within his dominion or control." State v. Stringer (Sept. 29, 1997), Scioto App. No. 97 CA 2506, unreported. A person has constructive possession of an item when he is conscious of the presence of the object and able to exercise dominion and control over that item, even if it is not within his immediate physical possession. State v. Hankerson (1982), 70 Ohio St.2d 87, syllabus, certiorari denied (1982), 459 U.S. 870,103 S.Ct. 155. Thus, constructive possession can exist without physical contact as long as the person has the ability to exercise dominion and control over the object at issue. State v. Boyd
(1989), 63 Ohio App.3d 790, 796.
Possession is a voluntary act if "the possessor knowingly procured or received the thing possessed, or was aware of his control thereof for a sufficient time to have ended his possession." R.C. 2901.21(C)(1). "A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). See, also, State v. Stivers (Mar. 19, 1990), Butler App. No. CA89-05-079, unreported. "That the defendant exercised dominion or control over drugs may be indirectly proven, through circumstantial evidence, even when the defendant is not present when the drugs are found." Statev. Combs (Sept. 10, 1991), Montgomery App. No. 11949, unreported, at 4, citing United States v. Craven (C.A.6, 1973),478 F.2d 1329.
After thoroughly reviewing the record, we find that appellant had the ability to direct or control the use of the package and its contents and that he constructively possessed the cocaine. The record shows that appellant's wallet was recovered in a closet in the master bedroom in Payne's residence. Appellant testified that whenever he would come to Middletown to visit Payne, his girlfriend, he would always stay at her residence. Appellant had been staying with Payne since October 11, 1997. Appellant twice admitted to the police, orally and in writing, that he had arranged with a friend from Florida to have the package containing the cocaine and the scale delivered to Payne's residence where he knew he would be staying. Appellant also told the police that he had instructed Payne to sign for the package but that she did not know what the package contained or what it was for.
We find that the foregoing is circumstantial evidence that appellant had the ability and intention to exercise control over the package and its contents, which therefore supports the guilty verdicts. While appellant, at trial, denied knowing anything about the package and its contents, it was the duty of the trier of fact, the jury, to resolve conflicts in testimony and determine the credibility of the witnesses. SeeDeHass, 10 Ohio St.2d 230. Based upon the record before us, we find no reason to disturb the jury's evaluation of the credibility of the witnesses. We therefore find that appellant's conviction was not against the manifest weight of the evidence. Appellant's first assignment of error is overruled.
In his second assignment of error, appellant argues that the trial court erred in overruling his motion to suppress[3] his written statement. Appellant claims that his statement was involuntary because of psychological coercion, trickery, and deception by the police.
"A suspect's decision to waive his privilege against self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct."State v. Otte (1996), 74 Ohio St.3d 555, 562. The voluntary nature of a defendant's statement to police is to be determined from the totality of the circumstances. State v. Slagle (1992),65 Ohio St.3d 597, 600.
Appellant claims that the police coerced him into writing his statement by asserting that Payne would face prosecution and not see her daughter for twelve years if he did not give a statement. The detectives testified that after appellant became concerned about what would happen to Payne, they told him that Payne was facing prosecution based upon the fact that the package of contraband was addressed to her and sent to her address. Detective Fultz specifically testified that he thought "the actual statement was that she was going to be charged and that her time connected with this could be 10 years and that basically we were concerned that if she did not have involvement that that's a long time for her to spend away from her daughter."
"Admonitions to tell the truth are considered to be neither threats nor promises and are permissible." State v. Loza
(1994), 71 Ohio St.3d 61, 67. The detectives' references to Payne and the possible action that could be taken against her were in answer to appellant's concern as to what would happen to her. The detectives' alleged admonition to appellant to write a statement incriminating himself was in essence, albeit poorly phrased, an admonition to tell the truth and any discussion of Payne's culpability was not coercive. See Statev. Loza (Apr. 19, 1993), Butler App. No. CA91-11-198, unreported.
Appellant also claims that he was coerced into confession by promises from the detectives that no federal charges would be brought against him. Detective McIntosh testified that they only "promised" they would testify in court and tell the U.S. postal inspectors that appellant cooperated with the police if he wrote the statement. Detective McIntosh testified that they told appellant they could not make any promises with regard to charges being filed by another agency. "Promises that a defendant's cooperation would be considered in the disposition of the case, or that a confession would be helpful, do not invalidate an otherwise legal confession." Loza,71 Ohio St.3d at 67. We find that the detectives, promise was not coercive and did not render appellant's statement involuntary.
Finally, appellant asserts that the detectives deceived him by falsely telling him he had been followed and had made incriminating statements on taped telephone conversations. Deceptive statements made by police do not necessarily make a defendant's statement involuntary. State v. Cooey (1989),46 Ohio St.3d 20, 27. Furthermore, while deception is a factor bearing on voluntariness, this factor, standing alone, is not dispositive of the issue. State v. Wiles (1991), 59 Ohio St.3d 71,81. While we agree that the detectives made these false statements to appellant during the interview, we find that these statements were insufficient to make his otherwise voluntary statement inadmissible.
Having reviewed the totality of the circumstances surrounding appellant's written statement, we find that it was not the result of police coercion but that it was voluntarily given by appellant. The record shows that appellant was fully advised of his Miranda rights prior to the interview and prior to making the written statement and that he voluntarily agreed to speak to the detectives and give a statement without an attorney being present. See United States v. Melnikas (S.D.Ohio 1996),929 F. Supp. 276.
We therefore find that appellant's written statement to police was voluntary and that the trial court properly overruled appellant's motion to suppress. Appellant's second assignment of error is overruled.
In his third assignment of error, appellant argues that his five-year sentence for possession of cocaine was excessive. We disagree.
R.C. 2925.11(C)(4)(d) provides that "possession of [more than one hundred grams but less than five hundred grams of] cocaine is a felony of the second degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the second degree." R.C. 2929.14(A)(2) provides that "[f]or a felony of the second degree, the prison term shall be two, three, four, five, six, seven, or eight years."
"A trial court has broad discretion in sentencing a defendant and a reviewing court will not interfere with the sentence unless the trial court abused its discretion." State v. Yontz
(1986), 33 Ohio App.3d 342, 343. However, the record must indicate that the court considered the seriousness and recidivism factors set forth in R.C. 2929.12. State v. Turner
(1987), 37 Ohio App.3d 38, 40.
In its judgment of conviction entry, the trial court stated it had "considered the record, oral statements, any victim impact statement and presentence report prepared, as well as the principles and purposes of sentencing under [R.C.]2929.11, and ha[d] balanced the seriousness and recidivism factors [R.C.]2929.12." In light of the foregoing and the fact that appellant's sentence is within the statutory limits, we find that his sentence is not excessive. Appellant's third assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and KOEHLER, J., concur.
[1] R.C. 2925.11(A) states: "No person shall knowingly obtain, possess, or use a controlled substance." If the drug involved is more than one hundred grams but less than five hundred grams of cocaine, the offense is a felony of the second degree. See R.C. 2925.11(C)(4)(d). Illegal use or possession of drug paraphernalia in violation of R.C. 2925.14(C)(1) is a misdemeanor of the fourth degree. See R.C. 2925.14(F)(1).
[2] Following the search of Payne's residence, the white powdery substance was tested again. It again field tested positive for cocaine with a gross weight of 8.73 ounces.
[3] Appellant filed his motion to suppress on January 15, 1998, which the trial court denied on February 18, 1998.