RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0178P (6th Cir.)
File Name: 03a0178p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*

No. 02-5365

JEFF LEE KOLLEY,
  *Defendant-Appellant.*

---

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 00-00138—Thomas B. Russell, District Judge.

Argued: April 14, 2003

Decided and Filed: June 5, 2003

Before: SILER, GILMAN, and GIBBONS, Circuit Judges.

---

### COUNSEL

**ARGUED:** Michael R. Mazzoli, COX & MAZZOLI, Louisville, Kentucky, for Appellant. Candace G. Hill, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellee. **ON BRIEF:** Michael R. Mazzoli, COX & MAZZOLI, Louisville, Kentucky, for Appellant. Candace G. Hill, Terry M. Cushing, ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellee.

---

### OPINION

---

JULIA SMITH GIBBONS, Circuit Judge. Defendant-appellant Jeff Lee Kolley was convicted of one count of possession of an unregistered destructive device and one count of knowingly and intentionally manufacturing methamphetamine. Kolley appeals his conviction on the grounds that the evidence presented at trial was insufficient to establish beyond a reasonable doubt that he manufactured methamphetamine. Kolley also argues that the district court improperly applied a four-level enhancement to his sentence. For the following reasons, we affirm Kolley's conviction and sentence.

### I.

On August 4, 1999, officers from the Kentucky State Police, the Hardin County Sheriff's Department, and the Hardin County Task Force went to the mobile home of defendant-appellant Jeff Lee Kolley and his wife, Charlotte, in order to serve a felony warrant upon Charlotte. An officer knocked on the door of the mobile home and announced "Kentucky State Police," whereupon the door opened and some movement was heard. The officer entered the trailer, shined his flashlight, and saw Kolley standing in the doorway. The officer asked Kolley if Charlotte was there, and he said that she was not. However, another officer found Charlotte in the bedroom area.

While in the trailer, the officers noticed paraphernalia "consistent with drug activity." A few hours later, after obtaining a search warrant, the officers began a search of the mobile home. On the attached wooden porch in front of the mobile home, the officers found Red Devil lye, starter fluid (containing ether), and some muriatic acid. In a black leather jacket in the bedroom of the mobile home, officers also found a document reciting "the ephedrine reduction process or extraction process." The document describes the process of

using weight-loss tablets, ether, Red Devil lye, and muriatic acid to extract ephedrine. Detective Larry Henderson of the Kentucky State Police testified that extraction or reduction of ephedrine is the first step in the process of manufacturing methamphetamine. At trial, the government also entered into evidence written grievances filed by Kolley while in Hardin County jail, and asked the jury to compare the handwriting with the document found in the bedroom of the mobile home.

No evidence of ephedrine was found at the Kolley residence, but methamphetamine residue was found on a small spoon and a plastic container seized from the trailer, as well as in an inhaler found in the black leather jacket. In addition, thirteen-year-old Jessica Price testified that on August 3, 1999, she had visited the Kolley residence with her father, David Price, and had observed "stuff being cooked." She described what she saw as "meth" and added that she "knew it wasn't food or anything like that. It smelled like chemicals." She also testified that she didn't know exactly what the substance was and that she didn't know the chemical composition of methamphetamine.

In addition to the items previously described, officers also discovered several marijuana plants in a pot on top of the refrigerator in the mobile home. A marijuana plant was found in the backyard of the trailer, and high pressure sodium lights commonly used in the manufacture of marijuana were found in the crawl space underneath the trailer. A paper bag containing marijuana was recovered from behind the couch in the living room of the mobile home. More marijuana and marijuana seeds were found in the bedroom of the mobile home.

While conducting their search, officers also came across a duffle bag on the top shelf of the closet in the bedroom. The closet did not have a door or a curtain. Upon examination, the duffle bag was found to contain separate plastic bags wrapped in duct tape. The plastic bags contained electric blasting caps, four explosive sticks, or "cast primers," from which the date shipped code had been marked out, and a

Radio Shack remote control system with a range of 300 feet. Detective Henderson testified that "[i]f all four cast primers were used and they were initiated off, it would do severe damage or level the mobile home." According to the Bureau of Alcohol, Tobacco, and Firearms and the National Firearms Registration Transfer of Record, neither Jeff nor Charlotte Kolley had registered any firearms.

On August 22, 2001, Kolley was indicted on one count of possession of an unregistered destructive device, in violation of 26 U.S.C. § 5861, and one count of illegally manufacturing methamphetamine, in violation of 21 U.S.C. § 841(a)(1).[1] The jury found Kolley guilty on both counts on December 7, 2001. On March 11, 2002, the district court conducted a sentencing hearing. At the hearing, the court concluded that Kolley's possession of the unregistered destructive device was "in connection with another felony offense" and that a four-level enhancement under § 2K2.1(b)(5) of the United States Sentencing Guidelines was appropriate. Pursuant to this determination, Kolley received a total sentence of 151 months in prison. On March 19, 2002, Kolley filed his notice of appeal.

## II.

### A.

Kolley asserts that the government presented insufficient evidence to sustain his conviction under 21 U.S.C. § 841(a)(1). However, Kolley concedes that "he cannot prove that his trial attorney renewed her motion for judgment of acquittal, and he agrees with the government that the 'manifest miscarriage of justice' standard governs his challenge to the sufficiency of the evidence." Absent a manifest miscarriage of justice, Kolley's failure to renew his motion is a waiver of the right to challenge the sufficiency of

---

[1] Kolley also was indicted on one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), but that charge was later severed from the other two counts of the indictment.

the evidence on appeal. *United States v. Morrow*, 977 F.2d 222, 230 (6th Cir. 1992). Since no manifest miscarriage of justice occurred here, Kolley's claim is barred.

Moreover, even if the court were to consider Kolley's challenge to the sufficiency of the evidence, the government introduced ample evidence from which the jury could infer that Kolley manufactured methamphetamine. When reviewing a challenge to the sufficiency of the evidence, this court must not "weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Davis*, 177 F.3d 552, 558 (6th Cir. 1999). Instead, this court must "determine merely whether, after viewing the evidence in the light most favorable to the prosecution, and after giving the government the benefit of all inferences that could reasonably be drawn from the testimony, a rational trier of fact could find the elements of the crime beyond a reasonable doubt." *Id.*

In this case, the government presented evidence that several ingredients involved in the first step of the process of manufacturing methamphetamine were found in the mobile home, along with a handwritten document describing the first step. Many objects containing traces of methamphetamine residue also were found in the mobile home. In addition, Price testified that on the day before the search she had observed "stuff being cooked" which "smelled like chemicals." Although Kolley argues that "Price's supposition, given full weight and credit by the jury, is not enough by itself to support a conviction of Kolley for producing methamphetamine," the jury was not presented with Price's testimony alone. Price's observation, combined with the evidence found in the mobile home, adequately supported the jury's decision to convict Kolley of manufacturing methamphetamine.

### B.

Section 2K2.1(b)(5) of the United States Sentencing Guidelines instructs a court to increase a defendant's felony offense by four levels "[i]f the defendant used or possessed

any firearm or ammunition in connection with another felony offense." The term "firearm" is defined by § 2D1.1, application note 1, to include a destructive device. Because Kolley objected to the recommendation of the presentence investigation report that § 2K2.1 apply, the district court was required to make findings of fact in order to determine whether or not this guideline is applicable to his sentence. *See* Fed. R. Crim. P. 32(i)(3). After hearing Kolley's argument contesting the application of § 2K2.1, the district court overruled his objections. The district court observed that "the destructive device was in the closet shelf of the closet in the bedroom" and "was readily seen by the officers when they were in there." The district court also noted that "it had no legitimate application at all even any inference of a legitimate application and to use it in any type of farming operation, I guess you had to run an extension cord out to it for the detonating device, and it's not practical and it's not done." The district court pointed out that "this trailer was a small trailer . . . essentially kind of an efficiency" and that the device "was close enough to the underlying activity that was involved here . . . it could be assembled by someone who knew what they were doing very quickly." The district court acknowledged that "maybe it wasn't best for someone to use to protect their drug activity," but noted that "poor judgment" was not a defense. The district court thus concluded that an adjustment pursuant to § 2K2.1(b)(5) of the Sentencing Guidelines was appropriate.

Kolley now challenges this conclusion and analogizes the destructive device found in this case to a situation where "a defendant arrested at his residence has an unloaded hunting rifle in the closet." *See* § 2D1.1, application note 3. Specifically, Kolley argues that the device was capable of legitimate use, that "the device in Kolley's home was inoperable and incapable of quick assembly," that the "device was not located in close proximity to the alleged illegal activity," and that "the residence contained no drugs in need of defending, and no evidence was presented to show that the Kolley residence ever contained large amounts of controlled substances for sale." On this basis, Kolley claims that there

was no nexus between the destructive device and another felony offense.

When reviewing a district court's sentencing decisions, we "will disturb the underlying factual findings only if they are clearly erroneous." *United States v. Hill*, 79 F.3d 1477, 1481 (6th Cir. 1996). The district court's application of the Sentencing Guidelines to the facts is reviewed deferentially. *United States v. Ennenga*, 263 F.3d 499, 502 (6th Cir. 2001).

Possession of a destructive device that is merely coincidental to another felony offense is insufficient to support the application of § 2K2.1. *Id.* at 503. In its interpretation of the "in connection with" clause of § 2K2.1, this court has adopted the "fortress theory," which states that "a sufficient connection is established if it reasonably appears that the firearms found on the premises controlled or owned by a defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction." *Id.* (quotation omitted).

In this case, the district court's findings of fact were not clearly erroneous, nor was the application of the guidelines to those facts improper. First, although Kolley argues that the device was capable of legitimate use, including "removal of tree stumps and other similar tasks," testimony at trial established that no construction was taking place in the area surrounding the mobile home in August 1999, nor had Kolley been asked to blow up stumps on the property surrounding the mobile home. Second, the device was found in the bedroom, where the inhaler containing methamphetamine residue and the handwritten document describing the ephedrine-extraction process were also found. Third, although Kolley repeatedly emphasizes that the device required further assembly, the district court correctly explained that the device was not required to be the best method of protecting Kolley's drug activity. Rather, the device need only to have "had some emboldening role in defendant's felonious conduct" to support the application of § 2K2.1. *Id.* Detective Henderson testified that devices similar to the one found in the mobile

home are generally used "both to injure another party or to injure the officers who are maybe coming into the location where the drugs may be or to booby trap the place." In light of this testimony, the district court properly found a connection between the device and Kolley's conduct, regardless of whether the device was capable of rapid assembly.

**III.**

For the foregoing reasons, we affirm Kolley's conviction and sentence.