NOT RECOMMENDED FOR PUBLICATION
File Name: 05a0856n.06
Filed: October 18, 2005

**No. 04-6262**


**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

    **Plaintiff-Appellee,**

**v.**

**ANDREW MCCUTCHEN,**

    **Defendant-Appellant.**

                                 /

**ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE**


**BEFORE:**     **CLAY and GIBBONS, Circuit Judges and STEEH, District Judge.**[*]

    CLAY, Circuit Judge**.** Defendant appeals his conviction and sentence for being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922 (g). For the reasons set forth below, we **AFFIRM** Defendant's conviction; however, in light of the Supreme Court's recent opinion in *United States v. Booker*, 125 S.Ct. 738 (2005), we **VACATE** Defendant's sentence and **REMAND** the case for resentencing in a manner consistent with this opinion.


**I. BACKGROUND**

---

[*]The Honorable Judge George Caram Steeh, United States District Court Judge for the Eastern District of Michigan, sitting by designation.

## *Procedural History*

On July 21, 2003, a grand jury sitting in the Western District of Tennessee returned an indictment against Defendant. The indictment charged Defendant with being a felon in possession of a firearm shipped and transported in interstate commerce, in violation of 18 U.S.C. § 922(g). The case proceeded to trial. The district court denied Defendant's motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29 at the close of the Prosecution's case, but Defendant did not renew the motion at the close of all evidence. The jury convicted Defendant on March 23, 2004. Defendant was sentenced to 115 months imprisonment, followed by 2 years supervised release. The district court entered final judgment on October 14, 2004. Defendant timely filed a Notice of Appeal with this Court on the same day.

## *Substantive Facts*

On December 6, 2001, five police officers executed a search warrant at 2513 Spangler Drive in Humboldt, Tennessee. When the officers knocked on the door, Defendant answered and permitted them to enter. Defendant told Officer Danny Lewis that his sister and brother-in-law, Jerry and Angela Allen, were also present in the house. After confirming that the Allens were indeed present, the officers searched the house. Officer Lewis asked Defendant where the "weed" was. Defendant took Lewis to a kitchen cabinet where he pulled out a bag of marijuana.

In a cabinet above the refrigerator, about six to seven feet away from the cabinet in which the marijuana was found, the officers found two loaded firearms – a nine millimeter Hi-Point and a .44-caliber Ruger Blackhawk Revolver. In the Allens' bedroom, the officers found a box of .44 caliber ammunition.

The 2513 Spangler Drive residence was leased to the Allens. However, after being read his *Miranda* warnings and agreeing to give a statement to Lewis, Defendant listed the residence as his home address. Defendant told Lewis that he stayed at the residence "on and off" and admitted to having slept there the night before the search. Defendant also said he went to the residence "every day," in part to assist his brother-in-law, whose left arm is paralyzed. Angela Allen testified that Defendant "was living with [her] at the time" but did not have an assigned bedroom at the 2513 Spangler Drive residence. Jerry Allen testified that Defendant slept on the couch in the living room.

After the ammunition was discovered in the Allens' bedroom, and for the apparent purpose of ensuring the officers' safety, Lewis asked Jerry something to the effect of "where are the guns?" Jerry denied knowing about any guns. Jerry was later charged by the state of Tennessee with marijuana possession. In subsequent state court proceedings held pursuant to that charge, Jerry told the judge that he owned the two firearms uncovered in the search of his residence. Jerry also signed a notarized statement to this effect. At Defendant's trial, Jerry again testified that he owned the firearms, that the ammunition found in his bedroom belonged to him, and that he put the firearms in the kitchen cabinet in which they were found because nobody in the house used that cabinet. Jerry further testified that the cabinet was so high off the ground that someone would need to stand on a chair and reach up to open it.

Jerry claimed that he obtained the guns when he and Defendant ran into a "peddler" on the street who was pawning a sweater that caught Jerry's eye. Jerry asked the peddler to follow him home so that he could get some money. In the meantime, according to Jerry, Defendant left. Jerry says that he bought the sweater, and when the peddler asked him about an abrasion on his face, he

3

explained that he had been "sucker-punched" a couple of days earlier. The peddler then went out to his truck and produced a bag that contained the two guns. Jerry testified that he bought the guns and immediately stored them in the upper kitchen cabinet.

At trial the jury was read, in its entirety, a transcript of the recorded statement Defendant gave to the police at the station immediately following his arrest. In the statement, Defendant gave responses that linked him to the purchase of the two guns. When asked whether or not he knew anything about the Ruger Blackhawk .44 magnum, Defendant replied "yes." When asked, "What did he know," Defendant replied, "See, I got that – I bought that like – well, like I said, he – I got that for him." When pressed further and asked whether or not he bought the gun for Jerry, Defendant answered, "I got – I didn't buy it at no store. I can't buy no gun . . . . But you can go – but you can go to pawn – I mean the First Monday sale and just catch them out of town. I go to town, you know what I'm saying." Defendant went on to state later that the gun was not his, but that he "put money into" buying it.

The officer then proceeded to question Defendant about the Hi-Point 9 mm. When asked to whom the gun belonged, Defendant replied, "Now that there, I got that off a dude selling in the street." When asked the follow up question, "You bought this guy off a dude in the street," Defendant then tried to make a distinction between "bought" and "got," insisting that " I got it. Got it and bought it is a different thing." At one point Defendant even responded, "Uh huh" when the officer asked him, "So this is your gun?" Defendant suggested that the gun was for the protection of his paralyzed brother-in-law, Jerry.

4

Prior to trial, the Defendant filed a motion in limine seeking to prohibit the government from introducing any evidence of drug activity or other state law violations in the case-in-chief. Defense counsel argued that the marijuana found at the residence was not relevant, and should be excluded pursuant to Rule 404(b) of the Federal Rules of Evidence. The district court denied Defendant's motion, finding that Defendant's knowledge of where the marijuana was located was evidence that the Defendant had familiarity with the house, with the kitchen, and with the contents of the cabinets. The judge instructed the jury during Officer Lewis's testimony however, that the Defendant was not on trial for any controlled substance offense, and that they were not to consider the presence of drugs as relevant to the issue of the firearms. Defense counsel did not renew his objection to the testimony regarding the marijuana at trial, and Defendant's statement was read to the jury in its entirety.

Defendant unsuccessfully moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, at the close of the government's case-in-chief, but did not renew the motion at the close of all evidence. The jury convicted Defendant, and Defendant was sentenced to 115 months' imprisonment, in part due to a 4-level enhancement imposed by the district court. The judge also sentenced Defendant to two years supervised release.

## II. DISCUSSION

Defendant raises several issues on appeal. First, Defendant challenges his conviction, alleging the government failed to prove beyond a reasonable doubt that he possessed a firearm on or about December 6, 2001. Defendant secondly contends that he was prejudiced by the admission

into evidence of testimony related to his having voluntarily gone to the kitchen cabinet and located and removed a bag of marijuana. Finally, Defendant argues that the district court improperly sentenced him under what the court perceived as mandatory provision of the U.S. Sentencing Commission Guidelines. We address each of these arguments in turn.

## A. Sufficiency of the Evidence

### 1. Standard of Review

This Court's review is only for "manifest injustice" because Defendant failed to renew his motion for a judgment of acquittal at the close of the evidence under Federal Rule of Criminal Procedure 29. *United States v. Frederick*, 406 F.3d 754, 765 (6th Cir. 2005); *United States v. Wagner*, 382 F.3d 598, 611, n.2 (6th Cir. 2004); *United States v. Kolley*, 330 F.3d 753, 756 (6th Cir. 2003); *United States v. Price*, 134 F.3d 340, 350 (6th Cir. 1998); *United States v. Morrow*, 977 F.2d 222, 230 (6th Cir. 1992) (*en banc*). Accordingly, this Court may reverse the conviction "only if the record is devoid of evidence pointing to guilt." *Price*, 134 F.3d at 350; *United States v. McBride*, 362 F.3d 360, 369 (6th Cir. 2004); *United States v. Carnes*, 309 F.3d 950, 956 (6th Cir. 2002).

### 2. Analysis

This Circuit's seminal decision regarding proof of possession remains *United States v. Craven*, 478 F.2d 1329 (6th Cir. 1973), where we stated:

> Possession may be either actual or constructive and it need not be exclusive but may be joint. Actual possession exists when a tangible object is in the immediate possession or control of the party. Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others. Both actual possession and constructive possession may be proved by direct or circumstantial evidence. It is not necessary that such evidence remove every reasonable hypothesis except that of guilt.

*Id.* at 1333 (citations omitted). In *Craven*, we held that constructive possession of the multiple firearms discovered throughout the house was established where the defendant had constructive possession of the house and one of the rooms in which a firearm was discovered and made statements that he collected guns. *Id.* at 1333-34.

In addition, as this Court very recently reiterated, "[t]he government may prove constructive possession by presenting evidence that the person has dominion over the premises where the firearm was located." *United States v. Arnold*, 410 F.3d 895, 904 (6th Cir. 2005) (citing *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998)) (noting that there was evidence that the defendant and another person used the apartment in which the gun was found to process heroin and stash cocaine); *see also United States v. Clemis*, 11 F.3d 597, 601 (6th Cir. 1993) (*per curiam*); *United States v. Snyder*, 913 F.2d 300, 304 (6th Cir. 1990).

Applying these standards to the present case, the record contains ample evidence to support a finding that Defendant had constructive possession of the house and the firearms found inside the cabinet. *See, e.g.*, *Price*, 134 F.3d at 350. First, the evidence establishes that Defendant had dominion and control over the residence at 2513 Spangler Drive. Defendant listed 2513 Spangler Drive as his home address, referred to the residence as "my house," to the kitchen table as the place where "I sit," and to the cabinet in which the firearms were found as "my cabinet." Defendant also spoke of staying at the residence "off and on" and admitted he went to the residence "every day." Furthermore, Angela Allen, Defendant's sister, testified that he "was living with [her] at the time [of the search]." It is undisputed that he had stayed at the residence the night before the search occurred.

7

Even more damaging, not only did Defendant have dominion and control over the residence, but Defendant's own statements connected him to the firearms. He admitted having obtained the Ruger "at a pawn shop" and the Hi-Point "off a dude selling in the street." Defendant's insistence that the firearms were for Jerry's protection does not mean that Defendant did not have access to them or dominion and control over the area in which they were stored. Possession, as this Court said in *Craven*, "need not be exclusive and may be joint." 478 F.2d at 1333. Therefore we find Defendant's argument that the record is devoid of evidence to be without merit.

**B.     Admission of Testimony Regarding Defendant's Retrieval of Marijuana From a Kitchen Cabinet**

**1.     Standard of Review**

Defendant filed a motion *in limine* to exclude any evidence or testimony relating to "drug activity." The district court denied the motion, and defense counsel failed to renew the objection during Lewis's testimony about Defendant's retrieval of the bag of marijuana. Accordingly, this Court "must apply a 'plain error' standard of review." *United States v. Kelly*, 204 F.3d 652, 655 (6th Cir. 2000) (holding that motions *in limine* do not preserve evidentiary objections for appeal; a contemporaneous objection is required).

As this Court recently articulated: "Under [the plain error] test, before an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.' " *Johnson v. United States,* 520 U.S. 461, 466-67 (1997) (quoting *United States v. Olano,* 507 U.S. 725, 732 (1993)); *see also*, *United States v. Cotton,* 535 U.S. 625, 626 (2002). If we find that "all three conditions are met, [we] may then exercise [our] discretion to notice a forfeited error, but only if [ ] the error seriously affect[s] the fairness, integrity, or public reputation

8

of judicial proceedings." *Johnson,* 520 U.S. at 467 (quoting *United States v.* Young, 470 U.S. 1, 15 (1985)); *Cotton,* 535 U.S. at 631-32; *United States v. Milan*, 398 F.3d 445, 451 (6th Cir. 2005).

"'Plain error' is defined as an egregious error, one that directly leads to a miscarriage of justice. The 'plain error' doctrine is to be used sparingly, only in exceptional circumstances and solely to avoid a miscarriage of justice. A reviewing court should apply the 'plain error' doctrine to reverse only if errors were so rank that they should have been apparent to the trial judge without objection, or that strike at fundamental fairness, honesty, or public reputation of the trial." *United States v. Carney*, 387 F.3d 436, 453 (6th Cir. 2004) (internal quotation marks and citations omitted).

## 2. Analysis

The district court denied Defendant's motion *in limine* on the ground that Defendant's having retrieval of the bag of marijuana from one of the kitchen cabinets "was [ ] some evidence that the defendant has familiarity with that house, with that kitchen, and with the contents of the cabinets." In the district court's view, this evidence was relevant to a material issue in the case – constructive possession of the firearm – because the gun was found in another cabinet some six or seven feet away. As stated, when Lewis testified about Defendant's retrieval of the marijuana and read the portions of Defendant's statement, the defense did not object. Moreover, the district judge instructed the jury as follows:

> If there's testimony about drugs being found in the kitchen, or controlled substances, let me remind you that the defendant is not on trial for any sort of controlled substances offense. You won't consider the presence or absence of controlled substances or drugs of any kind as being relevant on the issue of whether or not the defendant possessed a firearm . . . . So remember, the defendant's not on trial for any controlled substances offense, and any testimony about that is not relevant on the issue of the firearm.

Defendant contends that the admission of Lewis's testimony regarding the marijuana and the portion of Defendant's statement regarding the same was erroneous under Federal Rule of Evidence 404(b), which permits the admission of "other acts" evidence if the other act occurred, evidence of it is probative to a material issue other than character, and if the evidence's probative value is not substantially outweighed by its potential prejudicial effect. *See United States v. Jenkins*, 345 F.3d 928, 939 (6th Cir. 2003); *United States v. Haywood*, 280 F.3d 715, 720 (6th Cir. 2002). Other than to recite these requirements, Defendant does not present a discernable argument specifically as to how this evidence is in fact Rule 404(b) evidence. Defendant argues only that the evidence of his retrieval of the marijuana was prejudicial and should have been excluded.

The question, then, is whether the admission of Lewis's and Defendant's references to the retrieval of the marijuana rose to the level of plain error in light of Rule 404(b)'s requirements. There is no dispute that the other act – the marijuana retrieval – occurred, and there appears to be no dispute that evidence of it was probative of a material issue in the case. Evidence that Defendant knew that one of the kitchen cabinets contained marijuana is, at the very least, probative of knowledge, and absence of mistake or accident with respect to constructive possession of the guns found in a cabinet nearby. *See* Fed. R. Evid. 404(b). Indeed, evidence that Defendant had access to, and dominion and control over, one kitchen cabinet is probative on the issue of his access to, and dominion and control over, other cabinets; specifically, the one where the firearms were stored. Thus, we do not believe that the district court plainly erred in determining Defendant's retrieval of the marijuana was probative of a material issue other than character.

The final Rule 404(b) requirement is simply that Rule 403 must be satisfied, i.e., the probative value of Defendant's retrieval of the marijuana must not be "substantially outweighed by its potential prejudicial effect." *Haywood*, 280 F.3d at 720; *see also United States v. Brown*, 147 F.3d 477, 483 (6th Cir. 1998); Fed. R. Evid. 403. In conducting this inquiry, this Court remembers that Rule 403 is a rule of *inclusion*. Accordingly, we must view the evidence in the light most favorable to its proponent, the government, and maximize its probative value. *United States v. Logan*, 250 F.3d 350, 368 (6th Cir. 2001). Against this backdrop, the implicit conclusion that the probative value of this evidence was not substantially outweighed by its potential prejudicial effect cannot be said to have been an error "so rank that [it] should have been apparent to the trial judge without objection." *Carney*, 387 F.3d at 452.

The central issue in the case was whether Defendant had constructive possession of a firearm. Two firearms were found in a cabinet six or seven feet away from the cabinet that Defendant willingly identified as containing marijuana. Therefore, the marijuana retrieval has significant probative value. In addition, the district court provided the jury with a clear limiting instruction (quoted above) to the effect that the marijuana evidence was not relevant to Defendant's guilt or innocence of the crime charged. Such instructions minimize any potential prejudicial effect a piece of other act evidence might cause. *See United States v. Gaitan-Acevedo*, 148 F.3d 577, 592 (6th Cir. 1998); *United States v. Myers*, 123 F.3d 350, 364 (6th Cir. 1997); *United States v. Feinman*, 930 F.2d 495, 499 (6th Cir. 1990). Given the strong probative value of Defendant's retrieval of the marijuana and the district court's limiting instruction, we find that admission of the evidence was

not error, and was specifically not an error so rank as to offend the "fairness, integrity, or public reputation of judicial proceedings." *Milan*, 398 F.3d at 451.

## C.      Sentencing Guidelines

### 1.      Standard of Review

Anticipating the Supreme Court's holding in *Booker*, Defendant objected to the 4-level enhancement at sentencing. Accordingly, this Court's standard of review is *de novo*. *United States v. McDaniel*, 398 F.3d 540, 546-47 (6th Cir. 2005); *United States v. Hazelwood*, 398 F.3d 792 (6th Cir. 2005).

### 2.      Analysis

Both parties agree that the case must be remanded for re-sentencing in connection with the imposition of a 4-level enhancement for possessing "any firearm or ammunition in connection with another felony offense," U.S.S.G. § 2K2.1(b)(5), because the district court engaged in the sort of judicial fact-finding that we now know violates the Sixth Amendment. *See Booker*, 125 S. Ct. at 756; *Milan*, 398 F.3d at 450-51; *United States v. Oliver*, 397 F.3d 369, 377-78 (6th Cir. 2005). Indeed, the district court itself agreed that if the Supreme Court applied the rationale of *Blakely v. Washington*, 542 U.S. 296 (2004) to the Sentencing Guidelines, re-sentencing of Defendant would be required.

In any event, our *Barnett* rule requires re-sentencing because the district court plainly erred in sentencing Defendant under the impression that the Guidelines were mandatory. *United States v. Barnett*, 398 F.3d 516, 527-29 (6th Cir. 2005); *see also United States v. Hudson*, 405 F.3d 425, 444 (6th Cir. 2005). As indicated, the government concedes that a remand for re-sentencing is

necessary, so there is no basis to rebut *Barnett*'s presumption that the sentencing error affected Defendant's substantial rights. *See Barnett*, 398 F.3d at 527-29.

### III.  CONCLUSION

For the reasons set forth above, we **AFFIRM** Defendant's conviction under 18 U.S.C. § 922 (g), but **VACATE** Defendant's sentence and **REMAND** this case for resentencing in a manner consistent with this opinion.