IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs September 13, 2017

## DOMINIQUE DANTWAN SIMONS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Montgomery County**
**No. 40800701     William R. Goodman, III, Judge**

_____

## No. M2017-00165-CCA-R3-PC

_____

Dominique Dantwan Simons ("the Petitioner") appeals from the denial of his petition for post-conviction relief arguing that trial counsel rendered ineffective assistance in advising him concerning his guilty plea and therefore the plea was not knowing and voluntary. Discerning no error, the judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT H. MONTGOMERY, JR., JJ., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Dominique Dantwan Simons.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; John Wesley Carney, Jr., District Attorney General; and Robert J. Nash, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Procedural History

#### *Guilty Plea Hearing*

On March 22, 2010, the same day that his case was scheduled for trial, the Petitioner pled guilty to Class B felony unlawful possession of one-half gram or more of a Schedule II controlled substance with intent to sell and was sentenced to eight years as a Range I, standard offender with probation after the service of one year in confinement. He received 364 days pre-trial jail credit, making him immediately eligible for release on

probation on this sentence. However, he was required to serve a general sessions sentence before he would be released. The State presented the following factual basis for the plea:

> On April fourth of 2008[,] U.S. Marshalls[,] along with the local drug task force[,] were hunting a fugitive, Charles Berrios. They set up surveillance at 2328 Riley Court, apartment two here in Clarksville. U.S. Marshalls noticed two black males enter that apartment; they descended on the apartment, knocked and announced their presence and their authority; the door was open; inside the residence was a Chauncy Darden, Samuel Bracy, Charles Berrios and the [Petitioner]. During a protective sweep[,] U.S. Marshalls observe[d] what appear[ed] to be narcotics manufacturing; there [wa]s [a] white powdery substance on the kitchen counter and sink, two digital scales, a Pyrex dish on the stove, paper towel filters and baking soda. There were little baggies of crack cocaine in the living room along with some marijuana. The [Petitioner] had . . . an outstanding warrant, either parole violation or something of that sort when they ran his name. [] Mr. Berrios was taken into custody. Pursuant to a consent search 245.7 grams of cocaine were located in the residence divided up equally into four separate bags. Those are the facts and circumstances.

The trial court advised the Petitioner of his rights, including his right to a trial by jury, right to confront the State's witnesses or to subpoena witnesses, and right to remain silent or to testify. The trial court explained the presumption of innocence, the burden of proof the State was required to carry to convict the Petitioner of the offense, and that the offense was a Class B felony with a range of punishment of eight to twelve years. The trial court also explained that no one could force the Petitioner to plead guilty and that there was no right to appeal from a guilty plea. The Petitioner acknowledged that he understood his rights and that he was waiving his right to a jury trial. The Petitioner also agreed that he wanted the court to accept his guilty plea and acknowledged that on April 4, 2008, he "knowingly possessed five tenths [] gram or more of cocaine with intent to sell it[.]" The trial court then sentenced the Petitioner pursuant to the terms of the plea agreement and dismissed the remaining counts.

### Post-Conviction Proceedings

The Petitioner filed a timely petition for post-conviction relief on March 17, 2011, claiming that he was denied the effective assistance of counsel because trial counsel failed to file a motion to reduce bond, failed to file a motion to suppress evidence, and failed to file a motion to dismiss. The Petitioner was incarcerated in Davidson County when he filed the petition but was later transferred to a federal penitentiary in Kentucky

and could not be transported to Tennessee for a post-conviction hearing.[1]  The Petitioner filed a pro se amended petition on September 5, 2012, in which he repeated the same claims of ineffective assistance of counsel raised in the original petition.

On May 23, 2013, the Petitioner filed a pro se "motion to vacate plea and dismiss conviction" on the grounds that he had not had a hearing on his post-conviction petition. The motion was summarily dismissed.  The Petitioner appealed, and this court affirmed the summary dismissal and remanded the case "for further proceedings on the [Petitioner's] post-conviction, if necessary." *Dominique Simons v. State*, No. M2013-01663-CCA-R3-PC, 2014 WL 1285493, at *2 (Tenn. Crim. App. Mar. 31, 2014), *no perm. app. filed*.

The Petitioner then filed a pro se Writ of Habeas Corpus Ad Testificandum, which the trial court summarily dismissed, and the Petitioner appealed the dismissal.  By order entered August 20, 2015, this court dismissed the appeal.  The order stated "the trial court should act on the [Petitioner's] post-conviction petition in accordance with the procedure set forth by the statute and rule." *Dominique D. Simons v. State*, No. M2015-00137-CCA-R3-HC (Tenn. Crim. App. Aug. 20, 2015) (order dismissing appeal).

By the time this court dismissed the appeal of the denial of the Writ of Habeas Corpus Ad Testificandum, the trial judge had retired, and the Petitioner's post-conviction case was assigned to a new judge.  As allowed by Tennessee Code Annotated section 40-30-110(a), the Petitioner was deposed on March 23, 2016.  Post-conviction counsel then filed an Amended Petition on March 31, 2016, claiming "that due to lack of contact and a sparse information flow between [trial counsel] and [the Petitioner,] the guilty plea made [by the Petitioner] was not fully knowing and voluntary because [the] Petitioner did not completely understand his legal options and the ramifications of his plea."

The post-conviction hearing took place on December 16, 2016.  The Petitioner's deposition and the transcript of the guilty plea colloquy were entered as exhibits.  Trial counsel was the only witness who testified at the hearing.

---

[1] The judgment of the United States District Court for the Middle District of Tennessee was an attachment to the Petitioner's letter asking that this eight-year sentence be served concurrently with his federal sentence.  According to the judgment, on August 8, 2012, the Petitioner pled guilty to "Conspiracy to Distribute and Possess With Intent To Distribute Controlled Substance, including 500 grams or More of Cocaine and 280 grams or More of Cocaine Base[.]"  The judgement shows "Offense Ended" December 31, 2010.  The Petitioner was sentenced to 262 months.

*Deposition Testimony of the Petitioner*

The Petitioner claimed that his guilty plea was not voluntarily entered. He stated that trial counsel represented him at the preliminary hearing, met with him at the jail three or four times, and met with him additional times in court. The Petitioner complained that trial counsel failed to discover before the preliminary hearing what one of his co-defendants had told police. According to the Petitioner, this co-defendant "made statements against" the Petitioner and the other two co-defendants that trial counsel did not know about. The Petitioner stated, "So I would think that [trial counsel] . . . would find out when the statement was made at the preliminary hearing before the preliminary hearing, before we went in there." He also complained that trial counsel did not give him a narrative of what the cooperating co-defendant told the police. The Petitioner stated that trial counsel "played me a piece of a tape that didn't really say nothing [sic] and then [he gave me] four pieces of paper and that's it, and then I'm trying to build off of that."[2]

The Petitioner stated that trial counsel "hit [him] with constructive possession" but "never told [him] the definition of constructive possession other than it's the same thing as actual possession[,]" which was what made the Petitioner "change [his] mind and go on and take the eight-year sentence[.]"[3] The Petitioner stated that he would never have pleaded guilty if he had known that "constructive possession and possession [are] two different things." When asked on direct examination if possession was the only thing he was charged with, the Petitioner stated, "It was possession -- schedule [II] possession, manufacturing, schedule [IV] possession and paraphernalia; something around that."[4]

The Petitioner said that trial counsel failed "to file a series of motions" that Petitioner wanted filed. Concerning trial counsel's failure to file a motion to suppress, the Petitioner stated trial counsel informed him that a defendant had standing to challenge a search with a motion to suppress if the defendant lived at the place searched; trial counsel never explained whether a guest had standing to challenge a search. The Petitioner stated:

---

[2] It is unclear from the record what this tape was or what the "four pieces of paper" were.

[3] The State's initial offer was eight years to be served in the Tennessee Department of Correction. The State later agreed to an eight-year split confinement sentence, with Petitioner serving one year in jail followed by seven years on probation. Because the Petitioner had served 364 days at the time he entered his plea, he was eligible for release on this sentence.

[4] We glean from the record that the Petitioner and three co-defendants were charged by presentment in June 2008 with possession of 26 grams or more of cocaine with intent to sell, possession of over one-half ounce of marijuana with intent to sell, manufacture of 26 grams or more of cocaine, and possession of drug paraphernalia. A Range II notice for the Petitioner was filed on August 14, 2008.

I told [trial counsel] that -- that everybody get[s] a right to suppression, you know what I'm saying; he's like no, you have to live there. So he never broke down the stipulation to without living there. He never said that a guest . . . has rights, you know what I'm sayin[g], or anything, you know what I'm sayin[g], he never asked me no [sic] questions or . . . just broke down the case to me.

The Petitioner claimed that, if trial counsel had filed a motion to suppress and the trial court had held a suppression hearing, he would have understood the difference between the legal concepts of constructive and actual possession, and he and trial counsel could have "put together a defensive argument . . . ."

On cross-examination, the Petitioner agreed that trial counsel filed a motion to reduce bond, his bond was reduced to $50,000, and after making bond he was released from custody. He also agreed that he failed to appear for trial on April 27, 2009, and his bond was revoked. The Petitioner was not apprehended until December 10, 2009. When asked about his failure to appear for trial and why it took over six months to serve the capias, the Petitioner stated:

[Trial counsel] told me to come down to his office. I went down to his office, he was not there. So, yeah, after that I was gone in the wind. Somebody was in court and told me that they issued a . . . capias for $200,000. I ain't got no 200 -- I barely got out the first time. So, yeah, for six months I -- as you say, I was in the wind.

The Petitioner wanted trial counsel to file a motion to reduce the $200,000 bond in effect after he failed to appear for his trial. The Petitioner explained that "unless [he] committed some violent offense on somebody that [his] bond wasn't supposed to be excessive like that."

The Petitioner agreed that co-defendant Darden, who resided in the apartment where the search occurred, filed a motion to suppress that was denied by the trial court. When asked if he lived in co-defendant Darden's apartment, the Petitioner stated:

[W]e just moved, you know what I'm sayin[g], I have no -- because I was supposed to be at my grandmother's house, you know what I'm saying, but I don't . . . go home, you know what I'm saying. I like . . . get a hotel room or go spend the night with a girl or kick it with one of my hom[]ies from over there, you know what I'm saying, so . . . it varies. My movement various [sic] from spot to spot.

*Testimony of Trial Counsel*

Trial counsel stated that he was in private practice from 2002 until February 2016 when he joined the District Attorney's Office. After he was appointed to represent the Petitioner, he filed a bond reduction motion, which the trial court denied. After the Petitioner's trial was reset because one of the State's witnesses was deployed overseas, trial counsel successfully moved to reduce the Petitioner's bond, and the Petitioner was able to obtain his release from custody. Trial counsel said the Petitioner failed to keep any of his appointments while he was released on bond and that he was unable to contact the Petitioner. The Petitioner then failed to appear for trial, and it took over six months for the authorities to apprehend the Petitioner.

Trial counsel said that, based on his billing records, he went to see the Petitioner ten times at the jail. Trial counsel said there were three co-defendants and that the Fugitive Task Force, while searching for one of the co-defendants, entered the residence of another co-defendant and discovered a large amount of cocaine divided into four bags. He stated that he did not believe the Petitioner had standing to challenge the search.

*Post-conviction Court's Order*

On January 11, 2017, the post-conviction court entered its order denying post-conviction relief. Concerning the failure to file a motion to suppress and a motion to dismiss, the post-conviction court stated:

> There were no facts to establish that the [P]etitioner lived at the residence or had any other property at the residence, therefore trial counsel believed the petitioner had no standing to support a Motion to Suppress. Of note was the fact that one of the residents filed a Motion to Suppress which was denied. Counsel also testified there were no facts or legal theory to support a Motion to Dismiss.

Concerning the guilty plea hearing, the post-conviction court stated:

> The [P]etitioner was placed under oath and inquiry made by the trial judge as to the [Pe]titioner's understanding of his rights as relates to every aspect of a trial, his understanding of the minimum and maximum sentence range, his right to testify or not testify and right to assistance of counsel. The [P]etitioner answered on the record that he understood such rights and voluntarily waived all such rights and that the sentence ranges were fully understood by him.

The post-conviction court found that trial counsel "reviewed the facts and applicable law in the case with the [P]etitioner [and] consulted with the [P]etitioner on several occasions[,]" that "the [P]etitioner both considered and participated in the decision to enter his plea," and that the "[P]etitioner was not denied effective assistance of counsel.

## Analysis

The Petitioner raises a single issue on appeal:

Trial Counsel rendered ineffective assistance of counsel because [Petitioner]'s guilty plea[] was not rendered knowing and voluntary, fully understanding the ramifications of said plea, therefore the plea given was in violation of the [Sixth] Amendment of the U.S. Constitution and/or Art. I § 9 of the Tennessee Constitution.

The Petitioner correctly argues that he was entitled to effective assistance of counsel "at all critical stages of a criminal prosecution[.]" We will therefore address the claims made in his pro se petition in the context of the above quoted issue.

### Standard of Review

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Appellate courts are bound by the post-conviction court's factual findings unless the evidence preponderates against such findings. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). When reviewing the post-conviction court's factual findings, this court does not reweigh the evidence or substitute its own inferences for those drawn by the post-conviction court. *Id.*; *Fields*, 40 S.W.3d at 456 (citing *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Fields*, 40 S.W.3d at 456 (citing *Henley*, 960 S.W.2d at 579); *see also Kendrick*, 454 S.W.3d at 457. The post-conviction court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick*, 454 S.W.3d at 457.

*Ineffective Assistance of Counsel*

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven in order for the court to grant post-conviction relief. *Strickland*, 466 U.S. at 687; *Henley*, 960 S.W.2d at 580; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley*, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)); *see also Goad*, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688); *see also Baxter*, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. Therefore, under the second prong of the Strickland analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

## Failure to File a Motion to Reduce Bond

Trial counsel successfully moved to reduce the bond to an amount that the Petitioner was able to secure. After the Petitioner was released on bond, he failed to appear for trial and was in his own words "in the wind," avoiding arrest. After failing to appear for trial, his bond was raised to $200,000. The Petitioner has failed to prove that trial counsel was deficient in failing to file a second motion to reduce his bond. Even if trial counsel had filed a motion to reduce bond, it was unlikely, based on the Petitioner's previous conduct in failing to appear for trial and avoiding arrest and his testimony, that he "barely got out the first time" on the $50,000 bond, that the motion would have been successful. *See Demorris Marcel Childress v. State*, No. M2008-01658-CCA-R3-PC, 2009 WL 2447650, at *5 (Tenn. Crim. App. Aug. 11, 2009), *no perm. app. filed* (trial counsel was not deficient in deciding not to file a motion to suppress because the motion would not likely be successful). This claim is completely without merit.

## Failure to File a Motion to Suppress

Trial counsel testified that he did not believe the Petitioner had standing to suppress the evidence obtained from the consensual search of a co-defendant's residence and that the co-defendant that resided in the residence was not successful in his motion to suppress. "If a petitioner alleges that trial counsel rendered ineffective assistance of counsel by failing to . . . file a motion to suppress . . . the petitioner is generally obliged to present the witness or the other evidence at the post-conviction hearing in order to satisfy the *Strickland* prejudice prong." *Demarcus Sanders v. State*, No. W2012-01685-CCA-R3-PC, 2013 WL 6021415, at *4 (Tenn. Crim. App. Nov. 8, 2013) (citing *Pylant v. State*, 263 S.W.3d 854, 869 (Tenn. 2008)), *perm. app. denied* (Tenn. Mar. 17, 2014). Here, the Petitioner did not present any testimony or evidence to support his allegation that he would have been successful in suppressing the evidence obtained during the consensual search. The Petitioner has failed to prove that trial counsel's performance in not filing a motion to suppress was deficient.

## Failure to File a Motion to Dismiss

Because the Petitioner presented no evidence at the post-conviction hearing to show how trial counsel was deficient in failing to file a motion to dismiss and because we cannot speculate as to the substance of this claim, the claim is waived. *Brimmer v. State*, 29 S.W.3d 497, 530 (Tenn. Crim. App. 1998). Additionally, the Petitioner waived this issue because he failed to argue the issue in his brief. *See* Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.").

The Petitioner argues that his guilty plea was entered unknowingly and involuntarily. When reviewing a guilty plea, this court looks to both the federal standard as announced in the landmark case *Boykin v. Alabama*, 395 U.S. 238 (1969), and the state standard as announced in *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977), *superseded on other grounds* by Tenn. R. Crim. P. 37(b) and Tenn. R. App. P. 3(b). *Don Allen Rodgers v. State*, No. W2011-00632-CCA-R3-PC, 2012 WL 1478764, at *5 (Tenn. Crim. App. Apr. 26, 2012). Under the federal standard, there must be an affirmative showing that the plea was "intelligent and voluntary." *Boykin*, 395 U.S. at 242. Likewise, the Tennessee Supreme Court has held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e. that he has been made aware of the significant consequences of such a plea . . . ." *Mackey*, 553 S.W.2d at 340. "[A] plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" *Blankenship*, 858 S.W.2d at 904 (quoting *Boykin*, 395 U.S. at 242-43).

In order to determine whether a plea is intelligent and voluntary, the trial court must "canvass[] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin*, 395 U.S. at 244. The trial court looks to several factors before accepting a plea, including:

> [T]he relative intelligence of the defendant; degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship*, 858 S.W.2d at 904; see *Howell v. State*, 185 S.W.3d 319, 330-31 (Tenn. 2006). Once the trial court has conducted a proper plea colloquy, it discharges its duty to assess the voluntary and intelligent nature of the plea and creates an adequate record for any subsequent review. *Boykin*, 395 U.S. at 244.

Statements made by a petitioner, his attorney, and the prosecutor during the plea colloquy, as well as any findings made by the trial court in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings*." Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Statements made in open court carry a strong presumption of truth, and to overcome such presumption, a petitioner must present more than "conculsory allegations unsupported by specifics." *Id.* at 74.

- 10 -

Failure to Explain the Difference Between Actual and Constructive Possession

In the amended petition for post-conviction relief, the Petitioner claims "that due to lack of contact and a sparse information flow between attorney and client that the guilty plea made was not fully knowing and voluntary because Petitioner did not completely understand his legal options and the ramifications of his plea." The Petitioner testified that he pled guilty because trial counsel did not explain constructive possession, resulting in his plea not being knowingly entered.

Possession "may be either actual or constructive." *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001). When a person "knowingly has direct physical control over a thing, at a given time, [that person] is then in actual possession of it." *State v. Edmondson*, 231 S.W.3d 925, 928 (Tenn. 2007) (quoting Black's Law Dictionary 1163 (6th ed.1990)). When a person knowingly has "the power and the intention at a given time to exercise dominion and control over an object, either directly or through others[,]" that person has constructive possession over the object. *United States v. Craig*, 522 F.2d 29, 32 (6th Cir. 1975) (quoting *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973)); *see also State v. Williams*, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981).

The proof in this case was that the Petitioner and three co-defendants were arrested in a co-defendant's residence, where law enforcement officers discovered 245.7 grams of cocaine divided equally into four separate bags. The Petitioner's presence at the scene and association with those in possession of the cocaine, alone, is not sufficient to conclude that the Petitioner possessed the drugs. *See State v. Bigsby*, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000). However, in this case, the fact that the cocaine had been divided into four separate bags and the fact that there were four individuals at the residence was circumstantial evidence from which a jury could determine that the Petitioner was in constructive possession of cocaine. If the Petitioner was knowingly in possession of cocaine, he could be found guilty whether the jury found his possession to be actual or constructive. Thus, the Petitioner has failed to prove any prejudice based on trial counsel's alleged failure to explain the difference between actual and constructive possession. He is not entitled to relief on this ground.

Guilty Plea Hearing

At the guilty plea hearing, the Petitioner confirmed that he understood that he was pleading guilty and that he decided to plead guilty on his own accord. The transcript of the plea hearing shows that the trial court conducted a satisfactory *Boykin* plea colloquy, informing the Petitioner of his rights, and the Petitioner stated that he understood he was waiving those rights by entering a guilty plea. While trial counsel did not testify about

the discussions that he had with the Petitioner regarding the differences between the legal concepts of actual and constructive possession, the Petitioner testified that trial counsel discussed actual and constructive possession with him. As noted above, a jury could have found the Defendant guilty whether his possession of the drugs was actual or constructive. Based on the record before us, the Petitioner failed to prove that his plea was unknowingly and involuntarily entered. He is not entitled to relief.

## Conclusion

The post-conviction court's judgment denying post-conviction relief is affirmed.


_____
ROBERT L. HOLLOWAY, JR., JUDGE